PHILLIPS, adm'r *versus* THOMPSON, et ux.

1. *Semble*—a decree in chancery rendered in this, or another State, where a certain sum of money is absolutely decreed, would be conclusive of the same right, in a subsequent action between the same parties, as in case of a judgment at law: and such decree, if no other objection prevails against it, might be made the foundation of an action at law.
2. But such judgment, or decree, to constitute a bar to a subsequent suit, must appear to have been rendered directly upon the same point, and between the same parties: and it is not sufficient, that the same matter insisted on in defence to a subsequent action, was incidentally involved in the former; or can be argumentatively inferred.
3. A judgment, or decree, cannot be used in evidence, unless it appear to have been mutual and reciprocal between the parties.

This action, being in debt, in Madison circuit court, was commenced by Phillips, the administrator of Ann Hancock, against the defendants, the executor and executrix of Mills Ely. The cause of action was a penal bond, executed by Mills Ely, in his lifetime, conditioned for the payment, to one Wilson, of seven hundred and fifty dollars ; which bond was assigned by Wilson to one Drew, and by the latter to the plaintiff's intestate. In defence to the action, the defendants, by plea in bar, relied on a duly certified record, of proceedings had in one of the chancery courts of Virginia; whereby it was insisted, that the bond then sued on, had been adjudicated, in that cause. From the volume of proceedings had in that chancery suit, it appeared, that Ely intermarried with Elizabeth, the daughter of said Ann, and had left the State of Virginia : that said Drew, being indebted to the estate of Thomas Hancock, the hus-

band of Ann, Ely purchased of Wilson and Whitfield, the sons in law of Drew, a tract of land, in consideration whereof the bond sued on, (and others,) had been given : that these bonds had been assigned to Drew, by Wilson and Whitfield, and by Drew to the said Ann, in satisfaction of his debt, due the estate of her husband.

After this transaction, certain of the heirs of Thos. Hancock filed their bill in chancery, against Ann Hancock and Mills Ely, and their sureties to the administration bond, as also against Drew, Wilson and Whitfield, for the purpose of securing their distributive shares in the estate of Thomas Hancock, and to enforce a sale of the tract of land purchased by Ely. It appearing that Mills Ely and Ann Hancock had left the State, a decree *pro confesso*, was taken against them. Ann Hancock having died pending the chancery case, Phillips became the administrator, and a decree was had, whereby a sale of the tract of land, purchased by Ely, was awarded; and other matters adjudged, not essential to be detailed. It did not appear in the record, that Ely had answered the bill in question; but that publication only, had been made against him.

In reference to this defence, the court below was requested to charge the jury, that the said transcript of the record aforesaid, was not proper evidence, in the said cause : First, because it did not show any final decree ; second, that it did not show that Ely, or his wife, or Ann Hancock, were properly parties thereto; third, that the said bill did not show any direct litigation as to the right of the plaintiff and defendants ; fourth, that the decree of a foreign court could not be pleaded in bar, to an action at law ; fifth,

that there was no evidence as to what effect or force a decree, in the State of Virginia, has in that State. The presiding judge, however, refused to make the charge requested, and instructed the jury, that the right of action on the bond sued on, was divested, by the decree, offered in evidence. Exceptions were taken, and the cause brought to this court, by writ of error.

So full a statement of facts, involved in this cause, has been made in the opinion of the court, that the Reporter has not found it necessary to draw from the record the extensive statements there contained ; and which would only serve to embarrass the reader, without at all involving the points decided.

*S. Parsons*, for plaintiff—*Hopkins, contra.*

SAFFOLD, J.—This was an action of debt, brought by Phillips, administrator of Ann Hancock, against William Thompson, executor, in right of his wife, and his wife, Eliza A. Thompson, executrix of Mills Ely, deceased. The foundation of the suit, was a penal bond, executed by Mills Ely, in his lifetime, on the 7th of July, 1817, for the payment, to George Wilson, of seven hundred and fifty dollars, on a day therein mentioned; for which payment, well and truly to be made, Ely bound himself, his heirs, &c. in the penal sum of fifteen hundred dollars. The bond was assigned, by Wilson, to Benjamin Drew, and by him, to Ann Hancock, the plaintiff's intestate.— The suit was instituted in March, 1829, in the Circuit court of Madison county.

Issue was joined on the plea of payment; and an agreement was entered of record, that the parties re-

spectively, should be at liberty to give in evidence any special matter constituting a good defence, or replication thereto; also, that the same issue and verdict to be rendered thereon, should equally apply to three other cases, then on the docket between the same parties. It has been subsequently agreed that this decision shall also govern all four of the cases. A trial was had in the Circuit court, when a verdict was rendered for the defendants. From this decision the plaintiff below prosecutes error, the grounds of which appear, from a bill of exceptions taken on the trial. From this it is shown that the defence consisted of a voluminous record of a chancery proceeding, had in the Williamsburg district, Virginia; which it is necessary to notice so far only as to shew the principles of this decision in relation to it.

It appears, that all the matters in controversy, originated in the State of Virginia, and that they arose out of the administration and settlement of the estate of Thomas Hancock, deceased, who died, there, in the year 1816. Ann Hancock, the widow of the deceased, and Mills Ely, the husband of Elizabeth, one of the several daughters of the deceased, administered on the estate. Drew, being indebted to the estate, to the amount of about three thousand dollars, Ely purchased of one Wilson and Whitfield, (the sons-in-law of Drew,) a tract of land, and executed to them, bonds for the consideration, to about the same amount, which bonds they transferred to Ann Hancock, the administratrix, (by an assignment, in her individual name,) in discharge of the debt due from Drew to the estate; whereby Ely became debtor to the estate, to the amount of said bonds, or, to Ann Hancock, according to the legal effect of the

PHILLIPS adm'r *vs.* THOMPSON, et ux.

transaction; and which bonds are the subject of this suit, and the others depending on it.

After this, without making payment, or in any way settling the estate, Ely absconded, from Virginia, a portion of the estate remaining unadministered, and carried with him, all his moveable property; but left his portion, in right of his wife, of the slaves, constituting the widow's dower, which, in her, was only a life-estate, and the tract of land, thus purchased by him.

After this, a suit in chancery was prosecuted, in the names of all of the children of Thomas Hancock, and the husbands of the married daughters, (E. E. Phillips, being the husband of one,) against Mills, Ely and his wife, Elizabeth, and Ann Hancock, and Samuel Thomas and Exum Ely, securities of the administrator and administratrix, in their administration bond; also, against the said Benjamin Drew, George Wilson and Samuel Whitfield, who had been parties in the transfer and exchange of the notes and bonds, as aforesaid. The object of the bill was to secure the complainants, as heirs of the deceased, in their distributive shares of the estate, by all the means within the reach of the chancery: among other things, to subject the tract of land purchased by Ely, as aforesaid, and his interest in the said dower estate—to test the responsibility of the three persons named, as having participated in the settlement of the debt due the estate from one of them, by assigning the administrators' individual bonds to the administratrix, in discharge of the former; and to fix the liability of the securities to the administration bond. Ely and wife, having left the State, service of process was perfected on them, only by

publication; and, failing to appear and answer, the bill was ordered to be taken for confessed, against them. Other defendants answered; and a variety of interlocutory orders were granted. Before the suit had been matured, for final hearing, the death of Ann Hancock, administratrix, one of the defendants, was suggested. Then, Phillips, one of the heirs, in right of his wife, and one of the complainants, as aforesaid, was made also, a defendant, as her administrator.

In the multiplicity of other decretal orders, and proceedings had, pursuant thereto, reports were made, by a commissioner, appointed for the purpose, identifying Ely's tract of land, and estimating its value at two thousand dollars—making division of the slaves, and placing the portion thereof allotted to Mills Ely and his wife, (in their absence,) in the possession of said Phillips; and concerning which lot, nothing farther is shewn, except an order for the sale of it towards payment to the heirs. A decretal order, however, had passed, in the lifetime of Ann Hancock, requiring of the administrator and administratrix of Thomas Hancock, an account of their administration: and a report by the commissioner, showing the amount in which each was indebted to the estate; also, what personal estate, and its value, had been left by the absconding Ely.— Pursuant thereto, an account was reported, by the commissioner, of which notice was personally given, to Ann Hancock, and by publication to Ely. It was decreed, that the tract of land purchased by Ely, as aforesaid, should be sold by the marshal, and the proceeds thereof be paid to the complainants, in equal shares among them; and the same was accordingly sold, at only about eight hundred dollars, and distri-

buted as directed. , Further, it was decreed that
Drew, Wilson and Whitfield, for their participation
in the exchange of the bonds for the notes, as afore-
said, be held liable for the amount of the former (they
being the same now sought to be recovered,) in the
event of the failure of the administrator or adminis-
tratrix and their securities, to pay the same; and that
Phillips, administrator of Ann Hancock, should pay
to himself and the other complainants, out of the es-
tate of Ann Hancock, the amount of her deficit as ad-
ministratrix.

It also appears, that according to the different re-
ports and orders of settlement, embracing the pro-
ceeds of Ely's said tract of land, as sold by the Mar-
shall, that he then stood indebted to the estate in
the sum of  3,267  75; and that the estate of Ann
Hancock was in like manner indebted in the sum of
$1,008  52.

This sketch of the proceedings in chancery, suf-
ficiently discloses the nature of the defence, made to
this action, in the Circuit court, and the questions
presented for revision here.    The transcript of the
chancery proceedings having been read in evidence
by the defendants below, the counsel for the plaintiff
moved the court to instruct the jury, that the same
was not proper evidence for their consideration, un-
der the issue joined; because it did not shew any
final decree in the suit; did not shew that Ely, or
his wife, or Ann Hancock, was properly made a party;
did not show that, as between the plaintiff and de-
fendants to this suit, there was any litigation of their
rights, the same as to them being only collateral, not
direct; that a decree of a foreign court cannot be
pleaded in bar to an action at law; that there was no

evidence as to what effect, or force, a decree in the State of Virginia has, in that State. But the court overruled all the objections taken, and held the evidence proper; and instructed the jury that its effect was to deny the plaintiff any right of action upon the bonds in question; that his right thereto was divested by the decree.

The opinion of the court, and the instructions given the jury, as stated, are assigned as the causes of error.

The question, then, is not whether the transcript of the chancery proceedings, was evidence, for what it was worth; not whether the jury were at liberty to infer from it, that the debt sued for had been extinguished, and the note discharged, in whole or in part, by the property of Ely, left in Virginia, but whether the right of action on the note was barred.

If the proceedings can be viewed as a judicial determination between the same parties, of the same right, directly in issue, then the record does not show a satisfaction of perhaps one third of the amount due from Ely—making a liberal allowance for his unsold interest in the estate. The agreements of the parties entered of record, apply the decision equally to this, and the three other cases, similarly situated. The aggregate of the sums, appearing to have been originally due, was about three thousand dollars, and that so long since, that the interest thereon, until the trial, may have equalled the principal. The proceeds of Ely's property, then, could not have satisfied all his bonds: and, had it been otherwise, it was the province of the jury to have made the computation.

If the actions were barred by the record, it must

PHILLIPS adm'r vs. THOMPSON, et ux.

have been on the ground, that the record shewed a conviction merging the bonds in the decree, so as to give the creditor a remedy on it: such appears to have been the view of the court. But, were the proceedings such as to constitute the merger? Does the record show a decree on which a suit could be sustained, for the original debt, either by the administrator of Ann Hancock, or by the representatives of Thomas Hancock. The transcript shows a suit, by the heirs of Thomas Hancock, against Ely and his wife, and Ann Hancock, and the securities in the administration, and three other persons. In this, a balance was found, for ascertained sums against the administrator and administratrix, shewing the arrearages of each—for the entire amount they and their securities may have been jointly liable; and, for which the other three defendants were also held conditionally responsible—neither was discharged, by the decree, from the claim of the heirs, as respects any part of the arrears. Nor does it divest Ann Hancock of the legal interest in the bonds.

But, what I consider a more material fact, growing out of the record, is, that there was no direct litigation of the rights, as between the administrator and administratrix, nor any amount decreed, to be paid by the one to the other. As they were but co-defendants, there could have been no decision of their conflicting rights. Nor does it appear that the balance reported against Ely has been paid, either to the estate of Ann Hancock, or that of Thomas Hancock—a consequence of which is, that Ely's estate must remain responsible for such portion of the bond debts, as has not been satisfied, out of his estate; and unless the record of the chancery suit is evi-

dence to sustain a suit for this balance, it would seem the bonds must remain such. I understand it to be conceded, that a suit at law could not be sustained, on this record; but, it is contended, that the transcript is evidence of an adjustment of the claim, in the other State, by a court of competent jurisdiction. I cannot, however, perceive the principle, on which the record can be entitled to the effect of barring an action on the bonds, without proving their payment, or furnishing other evidence of the debt. If the record cannot be made the foundation of an action, for the balance thereby appearing to be due, a consequence must be, that it is incompetent to defeat one, otherwise sustainable.

The true doctrine is conceived to be, as read, in argument, "that the judgment of a court of *concurrent* jurisdiction, *directly* upon the point, is, as a plea, a bar, or as evidence, conclusive, between the same parties, upon the same matter directly in question, in another court:" also, "that the judgment of a court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive upon the same matter, coming incidentally in question, in another court, between the same parties, for a different purpose. But, neither the judgment of a concurrent, or exclusive jurisdiction, is evidence of any matter which came collaterally in question, though within their jurisdiction; or of any matter incidentally cognizable; nor, of any matter, to be inferred, by argument, from the judgment."[a]

a4Com. D. 195, note *a*

On both principle and authority, and in courts of either concurrent or exclusive jurisdiction, it appears, that a judgment, to constitute a bar to a subsequent suit, must have been directly upon the same point,

and between the same parties. It is not sufficient, that the matter was incidentally involved, or that the conclusion can be argumentatively inferred.

In the case of *Hopkins* vs. *Lee*,[a] referred to, by the defendants' counsel, the same doctrine is maintained. The court says, "a verdict and judgment of a court of record, or a decree in chancery, although not binding on strangers, puts an end to all further controversy, concerning the points thus decided, between the parties to such suit. In this, there is, and ought to be, no difference, between a verdict and judgment, in a court of common law, and a decree of a court of equity." But, "to points, which came only collaterly under consideration; or, were only incidentally under cognizance, or, could only be inferred, by arguing from the decree, it is admitted, that the rule does not apply."

[a] 6 Wheat. 109.

A further examination of that case is deemed unnecessary, in as much as the facts are inapplicable to this. There, the parties to both suits were the same, and *adversely* so, and the material fact, litigated in each, was the same.

The case of *Simpson* vs. *Hart*,[b] is, also, considered inapplicable to this. It was there ruled, that a decision of a court of competent jurisdiction, being *res judicater*, is conclusive and binding on all other courts, of concurrent jurisdiction. There the matter in contest had been regularly litigated, in a court of law, which had, at least, concurrent jurisdiction of the subject in controversy. The right claimed, and which, perhaps, should have been granted, having been denied, at law, the party sought relief in chancery, instead of prosecuting error. The court

[b] 1 Johns. C Rep. 91.

held, that the law tribunal, of concurrent jurisdiction, being first applied to, and having adjudicated the matter, it was incompetent for chancery to interfere, to correct its errors, or control its judgment.

The case of *Gelston* vs. *Hoyt*,[a] recognises the same principle, and declares, that the decree of a court of peculiar and exclusive jurisdiction, is conclusive, on the same point, in all other countries.

It is not conceived, however, that either of these latter cases can influence this decision, as the questions are essentially different, involving distinct principles of law. Besides the objections to the record as evidence in bar of the action at law, as already stated, that the decree was not between the same parties, and directly on the same point, other objections are worthy of consideration. It is not pretended that Mills Ely had any notice of the chancery suit, by personal service, or that he entered an appearance.— The object of the proceeding was to subject his land, and his interest, in right of his wife, in the estate of Thomas Hancock, as well as Ann Hancock's interest, to the payment of their arrearages as representatives of the estate. It was, therefore, virtually a proceeding *in rem*, especially as respects Ely ; nor does the record show any final decree against him. The transcript does not show any sale, or credit for the proceeds of his interest in the dower, but as to him and others, the record remained open for further proceedings. The suit, as a proceeding *in rem* was intended, as far as concerned Ely, not to determine the right to his bonds, which had been assigned to his co-administratrix, in her individual name, but to subject his land, and interest in the slaves, as administrator. Under these circumstances, it is not, and

[a] 1 Johns. C. R. 543.

could not be, contended, that this chancery record could be made the foundation of an action against Ely's representatives here, for the balance due on his bonds.    The consequence is, that it cannot have the effect of an *estoppel* in their favor.    The rule is, that a judgment, or decree, shall not be used as evidence against one, where the opposite party could not make the same use of it; or where an opposite decision would not have been evidence for him.    In other words, the benefit to be derived from the judgment, or decree, must be material and reciprocal.[a]

The fact that Ely's bonds were assigned to Ann Hancock, individually, is also worthy of consideration.    Admitting the doctrine contended for by the defendant's counsel, and as often held by this court, that, where the representative of an estate, in the sale of the property, has taken notes, or bonds, to himself, as executor or administrator, that the debts may be treated as assets, and the representative may sue upon them as such, yet this case is *prima facie* different, as the bonds were assigned to the adminis tratrix, individually; and it does not appear, by any competent evidence in this case, whether she or her administrator regarded them as assets, or as private property.  If it be admitted that she, or they, under the peculiar circumstances, had an election to regard them in either light, which is the most that can be allowed, this election is not shown.    For aught this court can know, the administratrix, or her representatives or securities, may have accounted to the estate for the amount of Ely's bonds, and may now be suing upon them to procure indemnity.    On account of the objections stated, the record is not considered evidence to the contrary.

[a] 1 Stark. 195; 4 Com Dig. 201.

We would not be understood as adopting the doc-
trine to the extent contended for by the plaintiff's
counsel, that a decree in chancery, rendered in this,
or another State, where there is no other objection to
it, cannot be made the foundation of an action at law;
or that it might not be conclusive of the same right
in a subsequent action between the same parties, as
in case of a judgment at law. The case of *Hugh*
vs. *Higgs*,[a] is so imperfectly reported, as not to afford
a satisfactory conclusion respecting the merits of that
question. We incline to consider the more current
and correct doctrine, to be otherwise, where the pay-
ment of a certain sum of money is absolutely decreed.

It is further insisted in argument, that though the
chancery proceedings in Virginia may not have ex-
tinguished the bond debts, or merged them in the
decree, yet as a proceeding *in rem,* the decree has di-
vested Ann Hancock's title or interest in them, and
vested it in the heirs of T. Hancock; and thereby
deprived the administrator of the former, of any right
of action upon the bonds. I concede the principle
that chancery is competent, by a proceeding *in rem*
to transfer the title to property, either real or person-
al, from one to another; and, under proper circum-
stances, the title thus vested, may be used as evi-
dence against persons not parties to the chancery suit,
or persons against whom, for the want of notice, or
from not being within the jurisdiction of the court,
the decree would not, in other respects, be evidence.
Admitting the competency of chancery, in a proper
case, to transfer the title to property from one per-
son to another, so as to vest the legal right in the
equitable claimant, it does not follow that the same
power could be exercised over the property in bonds,

8 Wheat.
697.

otherwise than by compelling the legal holder to make the assignment. Bonds or notes are but *choses in action*, the legal interest in which, can only be transferred in the form or manner prescribed by law. Whenever it may happen that any person, other than the legal holder, has an equity in the debt, and all the parties are within the jurisdiction of the court; chancery can secure the right, if properly applied to, by making the debtor and legal holder, co-defendants, and decreeing the payment, according to the equity of the case, and, thereby discharging the debtor, from his obligation to the obligee or assignee. Unless the debtor be within the cognizance of the court, so as to be subject to a decree, for the debt, in favor of another; or the obligee be subjected to a compulsory assignment of the bond, it is difficult to imagine how the legal interest can be transferred, unless by voluntary assignment. In this case, the bond was drawn payable to the obligee, or his *order*, not to bearer, even if that could aid the defence.

But, on this occasion, it is less important to inquire, what chancery can do in these respects, than what it has done. As already shewn, it has rendered no decree against Ely, for this debt, in which the bond is merged. It has compelled no assignment of the bond, by Ann Hancock, or her administrator, transferring the legal interest to the heirs, or any other person, nor has any such been voluntarily made. It has made no decree, (if the authority were admitted,) declaring a transfer of the property in the bond. If, therefore, it be conceded, that the decree has recognised the heirs, as the persons entitled to the proceeds of the bond, when collected, Ann Hancock's

administrator must stand, as their trustee, for the purpose of making the collection.

Whether the securities of this administrator would be responsible for his proper application of the proceeds, is a question that neither this court nor Ely's executors have any any right to investigate. Payment by him to any legal holder, would discharge him from further liability for the same. Giving to the chancery proceedings all the virtue that can be had for them, they could not place the heirs of T. Hancock, or any other person, in a more favorable attitude, in relation to the bond, than a voluntary assignment of it, by delivery to them, for a sufficient consideration. In that event, the suit upon it, against Ely's representatives must have been in the name of the last assignee. In such case, neither a failure to show, by the proceedings, that the suit had been brought for the use of others, nor evidence on the part of the defendants, that the equitable interest had been transferred, could affect the plaintiff's right to recover.

Then, in no view that can be taken of the case, can we conceive that the decree, (even if final, which does not appear,) has involved a merger of the bond, or has the effect to divest the administrator of Ann Hancock of the right of action, at law, upon the note. He has the right, at least, as the trustee of the heirs: and if so regarded, it was not necessary that he should have given himself that character to sustain the suit.

It is deemed unnecessary to notice, more particularly, any of the other facts of the case, or farther to investigate the powers of chancery, or the effect of judgments, or decrees, rendered in this, or an-

other State. It may be suggested, however, that if the defendants can claim any benefit from the proceedings in Virginia, it must be by resorting to chancery here, for relief against the suit or judgment, (should one be had,) at law.

From this view of the case, we are unanimous in the opinion, that the judgment below must be reversed, and the cause remanded.