ANSON J. BARKER *vs.* CITY OF TAUNTON.

Bristol.   Oct. 27, 1875. — Jan. 10, 1876.   MORTON & LORD, JJ., absent.

If a city passes an order reducing generally the grade of a street, and afterwards passes another order for the construction of sidewalks in the street, the owner of land adjoining the street, and injured by the change of grade, may, upon a petition under the Gen. Sts. *c.* 44, § 19, filed within one year from the time when the sidewalk in front of his premises was brought to its final grade, recover for all damage done by the change of grade.

Where, at the trial for the assessment of damages sustained by the change of grade in a street, the city introduces evidence that the changes made, including the petitioner's own improvements, had increased by a given sum the value of the premises, it is competent for the petitioner to show how much he has expended in improvements upon the premises since the change of grade.

It is no bar to a petition for the assessment of damages, sustained by the change of grade in a street, that the petitioner was one of the original petitioners for the improvements.

PETITION to the county commissioners for a jury to assess the damages to the petitioner's estate by lowering the grade of Winthrop Street and High Street, in the city of Taunton.

At the trial before a sheriff's jury, it appeared that the petitioner had for many years been the owner of an estate, on which he lived, on the westerly side of Winthrop Street, and that on November 8, 1873, he purchased an adjoining estate on the corner of Winthrop Street and High Street.

The petition for damages for the change of grade of Winthrop Street was presented to the mayor and aldermen on July 1, 1874.

The petitioner put in three orders passed by the respondent. The first, dated July 5, 1871, was as follows : " Ordered, that the grades shown on the plan herewith, and by measurements corre sponding thereto, be adopted and established as the grade of Winthrop Street from Harrison Street easterly so far as covered by said plan. The superintendent of streets is hereby directed to grade the same at an expense not to exceed eight hundred dollars, and the finance committee are hereby authorized to nego- tiate a temporary loan for the payment of the same."

The second order, dated September 3, 1873, for the construction of a sidewalk on Winthrop Street, was as follows : " Ordered, that the superintendent of streets be instructed to construct a sidewalk on the westerly side of Winthrop Street, from the post-office to the railroad crossing of the Taunton and New Bedford Railroad, with edge-stones, and cover the same with concrete, at an expense not exceeding twenty-four hundred dollars, to be paid from the appropriation for public improvements; and that he be instructed to make a report of the expense of the same to this board, in order that an assessment be made upon the abutters for the construction of said sidewalks."

The third order, dated May 20, 1874, for the construction of a sidewalk on High Street, was as follows: " Ordered, that the superintendent of streets be instructed to construct sidewalks seven feet in width on both sides of High Street, from Winthrop Street to Cohannet Street, with edge-stones, and cover the same with concrete, at an expense not exceeding twenty-two hundred dollars, to be paid from the appropriation for public improve- ments ; and that he be instructed to make report of the expense of the same to the committee on sidewalks, in order that an as- sessment be made upon the abutters for the construction of said sidewalk."

The petitions for the construction of the sidewalks on Win- throp Street and High Street were signed by the petitioner among others.

It appeared in evidence that under the order of July 5, 1871, the work of grading Winthrop Street, and the sidewalks thereof, was begun in the fall of 1871 ; that not much was then done ex-

cept to lower a portion of the street in front of the petitioner's premises; that in the summer and fall of 1872, the remainder of the street in front of the petitioner's premises was cut down to the established grade, and the sidewalks partially brought to the same grade; that in the summer and fall of 1873, the sidewalk in front of the petitioner's premises was finally reduced, under the direction of the superintendent of streets, to the established grade of Winthrop Street, and the curbing set preparatory to being covered with concrete, and a portion of the street several rods below the petitioner's premises was filled in to raise the same to the required grade.

It also appeared that the work upon High Street was commenced soon after the third order was passed, and the work completed during the summer; that, in doing the work, the grade of the street and sidewalk in front of the petitioner's premises was considerably lowered, and the injury to said estate, for which damages were claimed, was caused by such lowering.

The respondent objected to any evidence of damage sustained by the petitioner by the construction of the sidewalks, because he signed the petitions for making the sidewalks; but the objection was overruled, and the evidence admitted.

As the orders numbered two and three for the construction of the sidewalks do not authorize any change of grade, the respondent objected to any evidence tending to show damage to the petitioner by any change of grade of these streets for the purpose of constructing these sidewalks. The objection was overruled, and evidence admitted of all the acts done by the superintendent of streets, and those in his employ, in the construction of these sidewalks.

The petitioner, on his examination in chief, stated what expense he had incurred in consequence of the change of grade, and testified at length and without objection to the details thereof. Several experts, called by the respondent, testified that the change that had been made had increased the value of the petitioner's premises from $500 to $1500, but in making this esti mate they included what had been done by the petitioner as well as the city. The petitioner was then recalled, and asked what he had expended beyond what he had already stated. The respondent objected to the question, because it in effect was asking

the witness to state what improvements he had made upon this estate. The objection was overruled, and the witness answered $1500 or $1600. On cross-examination, he stated that about $500 of this sum had been expended in repairing the interior of the house, about $500 for painting the exterior of the house, and the remaining $500 or $600 he was unable to account for, further than by saying that he had employed a team a great part of the summer, at $3.50 per day.

The respondent asked that the jury be instructed as follows : " That under this warrant the petitioner cannot recover for the change of grade under the order of July 5, 1871, if the petition of the petitioner was not presented to the mayor and aldermen within one year from the completion of the work under that order." This instruction was refused ; but the jury were instructed that the petitioner was entitled to recover for all the damages done to his estate by the change of grade, he having presented his petition to the mayor and aldermen within one year from the time when the sidewalk in front of his premises was brought to its final grade.

The jury returned a verdict for the petitioner. In the Superior Court, the petitioner moved that the verdict be accepted and recorded. *Aldrich*, J., overruled the motion, and ordered the verdict to be set aside ; and the petitioner appealed.

*E. H. Bennett & H. J. Fuller*, for the petitioner.

*G. E. Williams*, for the respondent.

COLT, J. The petitioner claims damages for the act of the city in reducing the grade of two streets. At the trial before the sheriff's jury, he put in evidence an order passed in July, 1871, establishing the grade of Winthrop Street, followed by an order in September, 1873, for the construction of a sidewalk in that street ; and also by an order in May, 1874, for the construction of sidewalks on High Street.

It was in evidence, that, under the order of 1871, work on Winthrop Street was carried on through the year and into the summer and fall of 1872, when the street in front of the petitioner's premises was cut down to the established grade, but the sidewalks were only partially brought to grade. In the summer and fall of 1873, the sidewalks were finally reduced to the established grade of that street. The petitioner is required to file his

petition for damages within one year from "the completion of the work." Gen. Sts. *c.* 44, § 19. This petition was filed July 1, 1874, and the respondent asked that the jury be instructed that the petitioner could not recover for change of grade under the first order, if the petition was not presented within one year from the completion of the work under that order; but the jury were told that the petitioner, having presented his petition within one year from the time when the sidewalk in front of his premises was brought to its final grade, could recover for all damage done by change of grade.

In view of the real issues presented by the evidence, we cannot see that this instruction is fairly open to the objection that it takes from the jury a question of fact which should have been submitted to them, namely, the question when the work was completed. There was no contradictory evidence as to the time when the work was done. The real question was, whether the year began to run from the completion of the grade of the street proper, that is, the part devoted to carriage travel, or from the completion of the grade of that part devoted to foot travel. There was no dispute but that the petition was presented within a year from the latter time. It would have been erroneous to have ruled that it must be presented within a year from the time when the grade of the carriage way was completed. There is nothing to show that the order of 1871 is limited to the latter, and it is broad enough in terms to cover the whole street. The sidewalks are a part of the street; and it appears that in fact the change of grade in the sidewalk was commenced and partly completed before the order of 1873, for the construction of a sidewalk, was passed. There is nothing in the terms of the last order inconsistent with the order of 1871, or which shows that it was intended to supersede or repeal that order. The first relates only to the grade of the whole street; the last, to the construction of sidewalks with concrete pavement and edge-stones. There is nothing which determines that the work of grading was done under the last order after September, 1873. Under both, the work was done by the superintendent of streets; and it would be unjust to the petitioner now to hold that the grading, so far as it was done after the last order, should be referred only to that, so as to defeat or diminish his claim for damages. The

respondent was not wronged by the instruction given and the refusal to give the one asked.

The respondent objected that the petitioner should not be allowed to state how much he had expended in improvements upon the premises since the change of grade. And this objection would have been well taken if the cost of such improvements had been claimed as a substantive ground of damage. *Buell* v. *County of Worcester, ante,* 372. But here the testimony was competent in reply to the respondent's evidence that the changes made, including the petitioner's own improvements, had increased by a given sum the value of the premises. It was necessary for the jury to know how much of that sum was due to the petitioner's own acts. Being competent for this purpose, it is right to infer that it was submitted to the jury with proper qualifications, or that the objecting party did not care to limit its effect. It must appear affirmatively that such evidence was permitted under objection to be improperly used. *Earle* v. *Earle,* 11 Allen, 1.

It is no bar to the claim for damages made by the petitioner, that he was one of the original petitioners for the improvements. That alone is not evidence of an assent that his property shall be taken for public use without compensation.

It was conceded at the argument that the objection that the city was not liable for the acts of the superintendent of streets was disposed of by the decision in *Thurston* v. *Lynn,* 116 Mass. 544. All other points were waived by the respondent at the argument. *Verdict accepted.*