VAILE, *et al.*, *Plaintiffs in error*, v. THE CITY OF
INDEPENDENCE.

### Division Two, May 30, 1893.

1. **Municipal Corporation:** GRADING STREET: ULTRA VIRES. A
city of the fourth class has no power to grant to a street railroad com-
pany power to grade a street and it may, in an action for damages
brought by a property-owner, plead that the grant of such authority,
was *ultra vires*.

2. ——: ——: ——. The fact that the city engineer was pres-
ent at the time the grading was being done by the railway company
creates no liability.

3. ——: ——: ESTOPPEL. Property owners who join in a petition
for the establishment of the proper grade of a street and for its pave-
ment and make no objection during the progress of the work, are
estopped to recover damages from the city because it made an im-
proper grade although they were assured when they signed the peti-
tion that there would be "no cut;" especially is this true where the
board of aldermen were unaware of such representation.

*Error to Jackson Circuit Court.*—HON. R. H. FIELD,
Judge.

AFFIRMED.

*John N. Southern* and *Gates & Wallace* for plain-
tiffs in error.

(1) The form of the action used in this case was
not objected to by defendant and is expressly authorized
by section 1821 of Revised Statutes. (2) The plaintiffs
were not estopped from claiming damages done to their
property on Liberty street because they did the grad-
ing in front of their lot; they were required to do it
by ordinance or it would be done by the city at their
expense. *Pearce v. Milwaukee*, 18 Wis. 428; *Herzer v.*

*Milwaukee*, 39 Wis. 360. (3) The signing of the petition for the establishment of a grade or for the change of a grade does not estop the owner from claiming damages when the grade established is different from the one asked for. *Luscombe v. Milwaukee*, 36 Wis. 511; *Quinn· v. Patterson*, 3 Dutcher, 35; *Foster v. Boston*, 22 Pick. 33; *Taylor v. Burnap*, 39 Mich. 739; *Nickodemus v. East Saginaw*, 25 Mich. 456; *Mayor v. Porter*, 18 Md. 284; *Youngstown v. Moore*, 30 Ohio St. 133; *Jeffersonville v. Myers*, 2 Ind. App. 532. (4) The court should have admitted the ordinance granting permission to the street railway company to lay their track on Liberty street, and requiring the track to be laid at the established grade; and also the evidence that the city engineer was present directing the work when the street railway company graded the middle of the street. *Sheehy v. Railroad*, 94 Mo. 575; *Stickford v. St. Louis*, 7 Mo. App. 217; *Stickford v. St. Louis*, 75 Mo. 309; *Schumacher v. St. Louis*, 3 Mo. App. 297; *Mitchell v. St. Louis*, 14 Mo. App. 600.

*J. G. Paxton* with *A. M. Ott* for defendant in error.

(1) The demurrer to the evidence was properly sustained, because the grading of which plaintiffs complain was done by them and not by defendant. (2) The plaintiffs cannot recover on the second count in the petition because they petitioned for the grading of the street in question. Having set in motion this work, if the grade established was not satisfactory to them, they should have, at the time, so informed defendant's officers. This they failed to do, and three years after the completion of the change in grade, seek to secure damages therefor. *Cross v. City of Kansas*, 90 Mo. 13; Herman on Estoppel and Res Adjudicata, sec. 1221. (3) This petition was not required by statute, and was

the means taken by petitioners to set in motion the proposed improvement which they desired. The grade was established June 14, 1887; the ordinance for paving, in accordance with said grade,. was dated September 6, 1887; thus an interval of nearly three months elapsed during which no complaint of the proposed grade was made. A member of a municipal corporation will be presumed to be aware of its ordinances. *Palmyra v. Morton*, 25 Mo. 593. (4) Petitioners could not lie by and see the work progress to completion, which they had requested the defendant to do, and then, three years after, file their suit. *Sheehan v. Owen*, 82 Mo. 458.

SHERWOOD, J.—Action for damages against the defendant city; petition in two counts. The first charged that the plaintiffs were the owners of a certain lot in the city, fronting on Liberty street; that they had erected thereon a large brick store-room, with the basement corresponding with the grade of the street as it had for a long time existed; that the city afterwards by certain ordinances, without consent of plaintiffs, changed and caused to be. changed the grade of the street in front of their lot and building, thereby lowering the grade some two feet, etc., to plaintiff's damage in the sum of $2,500. The second count charges that plaintiffs were the owners of a lot in the city on Lexington street, and also the store-house thereon; that the city, by certain ordinances, changed the grade of that street in front of such property, thereby causing it to be lowered about one and one-half feet, by reason whereof said store-house was made difficult of ingress and egress, etc., etc., by which said property was damaged in the sum of $2,000.

The answer to the first count was, for the most part, a general denial. To the second, defendant

pleaded that plaintiffs had presented a petition to the city council of defendant, praying that defendant would establish a proper grade on Lexington street in front of plaintiffs' property, and would grade said street to the grade established; that complying with plaintiffs' prayer, defendant established and made the change of grade of which plaintiffs now complain; that plaintiffs, when said change in grade was established and the street graded in conformity with such change, made no objection thereto, and never until the suit was filed indicated that the change thus effected had damaged their property. Reply, general denial.

I. Under the provisions of section 4942, Revised Statutes 1879, the ordinance for grading Liberty street was passed. That section relates to cities of the fourth class, and declares: "The board of aldermen shall have power, by ordinance, to levy and collect a special tax on the owner or occupier of the property, * * * on any 'street, * * * within such city, for the purpose of grading * * * streets, * * * in front of or along the same; and if any owner * * * of any such property, * * * shall fail * * * to grade, * * * when required by ordinance, the board of aldermen shall cause the same to be done * * * at the owner's or occupier's expense, and collect by a special tax bill."

The evidence in this case shows that the city did nothing but pass the ordinance and that other parties on either side of plaintiffs' property having changed the grade in conformity to the ordinance in front of their property, that plaintiffs, in obedience to the ordinance, in about a year thereafter, changed the grade in front of their own property; and it is upon this change the first count in the petition is in part bottomed. As to that portion of the street which was graded by the street railway company, the city is not responsible;

cities of the fourth class possessing no power to grant such franchises to such companies. When this is the case, *ultra vires* is a good defense. Dillon on Municipal Corporations, Sections 457, 458, 504, 548, 935, 968. And as the city could only act by valid ordinance, the presence of the city engineer at the time the grading was being done by the street railway company, could not create a liability on the part of the city where none existed before. And a void ordinance could confer no authority. *Rowland v. Gallatin*, 75 Mo. 134, and cases cited; *Worley v. Inhabitants*, 88 Mo. 106. The evidence to support the first count was, therefore, properly held insufficient on demurrer. In saying this, it is unnecessary to say what our ruling would have been, had the allegations of the first count stated such a cause of action as the evidence would have supported.

II. The evidence offered in support of the second count was equally as insufficient as that previously mentioned, because the plaintiffs among others, signed a petition asking the mayor and board of aldermen to establish a proper grade of the streets around the public square with reference to the permanent buildings thereon, and procure the paving of the same, in conformity with the established grade, with cedar blocks, and to collect in payment therefor a special tax from the abutting property owners as provided by law. This petition plainly contemplates the establishment of the grade of the streets fronting on the public square, and the paving of the same after the grading had been done. And any assurance made to Williamson, one of the plaintiffs, when he was asked to sign the petition, that there would be "no cut" could not affect in any way the legal force of the words of the petition, especially so when the board was unaware of the representations made by Gudgell. Under the ruling of this

court in *Cross v. City of Kansas*, 90 Mo. 13, all who signed the petition were estopped to claim damages from the city, for doing that which they asked to have done. Not only did they sign the petition, but they remained quiet, making no complaint during progress of the work, and then three years afterwards brought this suit. In such circumstances such an action cannot be maintained. 2 Herman on Estoppel, section 1221. Therefore, judgment affirmed. All concur.