BARTON J. ROBINSON v. MAYOR AND ALDERMEN OF CITY OF
VICKSBURG.

[54 South. 858.]

1. EMINENT DOMAIN. *Damages. Estoppel. Constitution* 1890, *section* 17.

The owner of property is not estopped to claim damages resulting in
the change of grade of a street, because he signed a petition to
the mayor and board of aldermen asking that the street be paved.

2. SAME.

Constitution 1890, section 17, provides "that property shall not be
taken or damaged for public use, except on due compensation being
first made to the owner thereof," and this constitutional right is
not waived by the owner signing a petition for the paving of a
street where there is no express waiver in the petition of the
right to claim damages.

3. PEREMPTORY INSTRUCTION. *Jury.*

Where there is no issue of fact for the jury to try as to defendant's
liability for damage the court should give a peremptory instruction
for plaintiff as to liability.

4. PREJUDICIAL ERROR. *Instructions.*

In a suit by an abutting property owner against a city for damages
to his property caused by a change in the grade of a street where
the liability of the city was unquestioned, it was prejudicial error
to admit in evidence a petition, signed by plaintiff for the paving of
the street in question and to refuse to instruct the jury to find for
the plaintiff on the question of liability.

5. SAME.

Such erroneous action of the court was calculated to cause the
jury in determining both the question of liability and the quantity
of damages to render a compromise verdict as to the latter.

APPEAL from circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

Suit by Barton J. Robinson against the City of Vicks-
burg. From a judgment for plaintiff he appeals and
the city prosecutes a cross appeal.

The facts are fully stated in the opinion of the court.

*Brunini & Hirsch,* for appellant.

The court refused appellant instruction No. 13 directing the jury to find for the plaintiff, and submitted the question of liability to the jury.   We submit that this was error under the facts in this case.   There was no conflict in the testimony with reference to the raise of the grade of the street, and there was no testimony in conflict with the appellant's testimony that his property had been damaged.

Appellant was therefore, entitled to have the court instruct the jury to find for him.

The court refused appellant's instruction No. 11.   It was extremely important that the appellant should have an instruction which defined the grade of the street, for the reason that there was testimony to the effect that there were washes in the street; that the street sloped from one side to the other, etc., and especially in view of the fact that instructions Nos. 4 and 5 for the appellee were given to the jury.

Instruction No. 11 is almost in the exact words of the language of this court in the case of *City of Jackson* v. *Williams,* 2 Miss. 319.

The lower court erred in admitting over the protest of appellant, the fact that plaintiff had signed the petition requesting the appellee to pave Mulberry street; in likewise admitting the petition so signed; in likewise admitting article 25, of section 28, of the city charter; in likewise admitting the ordinance of the city, providing for the pavement.

At the conclusion of the testimony in the case, the appellant again moved the court to exclude the petition for the paving of Mulberry street, and also the ordinance passed thereon by appellee.   The court denied the motion.

In other words:   The court permitted the jury to consider the fact that appellant had signed the petition to pave the street; the ordinance adopted thereon, and the

charter with reference thereto.  Appellee offered this testimony as a complete defense to the action of appellant.

Appellant asked the court to give it instruction No. 12. which told the jury that it should disregard the fact that appellant signed the petition requesting the appellee to pave Mulberry street in front of plaintiff's property; and the defendant asked the court to give its instruction No. 3, which announces the opposite view of the law.  The lower court responded to the requests of appellant and appellee, that he wanted to be fair about the matter, and would give both instructions.  The attention of the court was immediately called to the fact that these two instructions were directly in conflict with one another, and the court then remarked that he would give neither one of them, and adhered to this ruling.

So the case went to the jury, neither upon the theory of the appellant, nor that of the appellee.  The jury, however, were permitted, by the ruling of the court to consider the fact that appellant had signed the petition, and they were left to determine what effect the signing of the petition by the appellant should have by way of defense.

To pave a street with brick or other modern paving material, where the grade of the street is not to be changed, the surface of the grade of the street must be excavated to the thickness of the depth of the material and foundation.  First goes a six-inch foundation of cement concrete; then a cushion of sand one and one-half inches in thickness, and upon the sand cushion are placed the material, in this instance, brick on edge.

All that is said with reference to the grade in the charter provision and the petition is:

"The cost of the grading of such work, and paving of the intersections, together with one-third of the cost of the remainder of the work to be borne by the city."

Now, nothing is said about changing the grade. What is understood by grading a street? Simply to bring it to grade; to bring it to the surface or to grade line.

"The ordinary meaning of the term 'grade' is the amount or difference between the 'grade line' and the level or horizontal line, and to grade a street is to bring the surface of the street to grade line. The term includes excavation and filling, so as to make the surface conform to the grade line." *Davee* v. *Saginaw* (Mich.), 32 N. W. 919.

In grading a street or roadway, where no change in the grade is to be made, it is always necessary to fill in the ruts or washes, or other uneven places. This is unquestionably included in the term "grade."

"Particular complaint is made that there was no evidence that the original grade of the street was 'well settled,' whereas, the surface was so uneven as to constitute no grade at all. The description of its character given by these words is quite immaterial. The term 'grade' is used in the statute, not to signify a level precisely established by mathematical points and lines, but the surface of the highways as it in fact exists. Any elevation or depression of this surface by the municipal authorities, resulting from an attempt to establish a grade, is a change of grade, which if damages result, will support an action. There is no error. The other judges concurred." *McGar* v. *Borough of Bristol* (Conn.), 42 Atl. Rep. 1002.

As a future step in the argument, we wish to call the court's attention to the fact that the testimony of appellant almost demonstrated, if it did not demonstrate, that his damages were in the neighborhood of three thousand dollars. The testimony was there that changes were necessary to be made in order to conduct his business in his shop; that the second story of the building could not be used for the purpose for which it was designed without change; that in making the change, his

machines, etc., had to be elevated, and that he had already gone to some temporary expense in protecting his building from the fill, etc. There was no testimony to the effect that the changes would not have to be made, nor was there any conflict as to the cost of the changes made necessary by the raise of the grade in front of appellant's property.

We contend most earnestly, that if the court had given instruction 13, directing the jury to find for the appellant, that appellant would have recovered at least three times as much damages as he did; and that even though the court had refused to instruct for appellant, and had excluded the petition for paving, that the verdict for appellant would have been over three times as large.

We are aware of the fact that by rendering the verdict in favor of the appellant, that the jury necessarily found the question of liability in favor of appellant, but we refuse to shut or eyes to the fact that the verdict was cut down by reason of the admission of the petition for the payment, which appellant signed, or by reason of the fact that the court refused to instruct peremptorily for the appellant.

We dare say that there is not a lawyer practicing at the bar in the state of Mississippi, who has had any court experience whatever, who does not know it to be an indisputable fact that a jury will not first determine the question of liability and then determine the question of damages. They will, invariably, consider both, and where the liability is not clear, or there is a controversy over it, they will cut down the verdict.

*Anderson & Voller,* for appellee.

We think that the mere statement of the proposition that appellant, by signing the petition under the circumstances indicated, is estopped to claim the damages demanded, is sufficient, even without citing authorities. However, we will not content ourselves with that, and

now call the court's attention to the propositions of law
relied on to support our contention.

The Missouri court, as far back as Nov. 15th, 1886,.
announced the doctrine as follows:

"A property owner, who has consented to the change
of grade of a street, by joining in a petition to the city
council to have such change made, is equitably estopped
from setting up any claim for damages resulting from
such change."

And this is so, even though "the petition was not
signed by property holders owning a majority of front
feet of property fronting on the part of the street to be
improved." *Cross* v. *City of Kansas,* 1 S. W. Rep. 749.

The court in this case cites with approval and quotes
from the case of *City of Burlington* v. *Gilbert,* 31 Ia. 357,.
at p. 367.

The Texas court on April 4th, 1894, announced the
same doctrine on the following statement of facts:

"Upon an examination of the evidence contained in
the statement of facts, we find that it was proven without.
controversy that prior to the construction and establish-
ment of the grade upon Maple street, plaintiff, joining
with a large number of others owning property abutting
upon said street, petitioned the council of the city of
Texarkana, in writing, to establish and construct a grade
upon Maple street, presenting strong and urgent rea-
sons for the prayer of the petitioners."

Damages resulted from the flow of water, and this.
suit was brought; thereupon the court used the following
language:

"It would hardly be reasonable to give the law a con-
struction which would authorize one to influence a city
council by petition to fix and construct a grade upon a,
street, and then permit him to recover damages for in-
juries which are incident to the proper construction of
such work. We think it would be more in harmony with
good conscience and sound reason to treat such an act as.

a consent to the construction of the grade, and a waiver of such damages as are incident to its proper construction. When the plaintiff signed and presented his petition to the city council praying for the fixing and construction of the grade upon Maple street, he consented, in the meaning of the Constitution, to all such damages as was incident to a proper and skillful construction thereof, and could only recover for injuries resulting from negligence of the city in constructing the work consented to by plaintiff." *City of Texarkana* v. *Talbot,* 26 S. W. 451, at p. 452. To the same effect is the case of *Collins* v. *Grand Rapids* (Mich.), 54 N. W. 889. See, also, 28 Cyc., pages 1086 and 1087, and notes.

But, we will be met with the suggestion that the petition under consideration in the instant case was not to change the grade, but to simply pave. We reply that in the charter and the petition, both paving and grading are contemplated. However, we will go a step further. The Missouri court on May 30th, 1893, announced this doctrine:

"Landowners who petition for the establishment of the proper grade of a street, and for the paving of the same, and sue the city for damages for a change of grade, although they were assured that there would be no cut, the board of aldermen being unaware of such representation." *Vaile* v. *City of Independence,* 22 S. W. 695, 28 Cyc., *supra.*

The Washington court on October 18th, 1894, in a case then before it. said:

"One who petitions a city to extend a street at the expense of the owners of the land fronting thereon, will be estopped from claiming damages for land taken or accruing to the land adjacent thereto by reason of cutting down the street."

And further: "A city petitioned to grade a street is authorized to establish a reasonable grade." *Ball* v. *City of Tacoma,* 38 Pac. 133.

The court's attention is again called to the fact that the city had no power to pave Mulberry street at the expense of abutting property on its own motion or initiative, but that in order for the paving to be done, it was necessary that this petition should be presented asking that such paving be done; that in the petition itself, as well as the charter provision under which it was gotten up and presented, it is specifically stated that the city shall pay for the grading that may be necessary to be done, for the paving of the street intersections, and for one-third of the balance of the work, and that the property owners are required simply to pay the other two-thirds; that is to say, that each property owner pays one-third of the balance of the paving which is done in front of and abutting his piece of property.

Just here we call the court's attention to the testimony of appellant himself, showing what he paid for this paving and what the city had to pay. It will be seen that it was in the contemplation of the petitioners themselves that some grading must be done in order that the street might be properly paved. The fact that it was not known to petitioners just what and how much might be necessary for that purpose, can possibly make no difference, and that unless the grading done was unnecessary or was negligently and improperly done, the property owner is estopped to claim any damages that might flow to him therefrom.

Another fact we desire again to mention, is that the record shows that there had never been an official grade on Mulberry street established. The court goes on to say upon a similar proposition.

"Where a property owner, after the adoption of an ordinance fixing a grade different from that in conformity to which he has improved his property, signs a petition for improvements to the street, he will be estopped from claiming damages resulting from improvements made on the last established grade." *Preston* v. *Cedar Rapids,*

63 N. W. 577.  Discussion of the facts on this case, found on pages 579 and 580, are interesting and instructive. The authorities, however, have gone even further than those already cited.

The Missouri court of appeals announces this doctrine:

"Where one signed a petition requesting the construction of a bridge, knowing that, in order to reach the bridge, certain approaches would have to be erected, which would raise the surface of the street in front of his premises, he was held estopped." *Justice* v. *Lancaster*, 20 Mo. App. 559.

By examining the record it will be seen that it was impossible to properly pave this street without bringing the west side up to the approximate level of the east side thereof.

It will be further seen from the testimony of witness, that for the very purpose of saving appellant's property from damage the east side of the street was cut as low as it was possible to do so, and conserve the proper conditions of other streets, and the west side was raised only to such a height that would possibly meet the requirements of the case.  The west side was then left more than a foot lower than the east side, but it was thought that they could get along with the street in that condition.

The courts have applied the doctrine herein contended for in cases of streets occupied by street railroads.  The rule is expressed about as follows:

"The cases are substantially agreed that the express consent, whether evidenced by writing or shown by parol, by the owner of abutting property, to the construction of a railroad in a street or highway, the fee of which is not owned by him, is irrevocable, at least after it has been acted upon." *Wolfard* v. *Fisher*, 7 L. R. A. (N. S.) 991, and note.

See, also, *Smyth* v. *Brooklyn U. Elev. R. Co.* (N. Y.), 23 L. R. A. (N. S.) 443, and note.

It will be observed that in the quotation made above, mention was made of the fact that the abutting owner did not own the fee in the street. The record in the instant case does not show who owns the fee to Mulberry street, and the presumption must be indulged of course in that state of case, that it is owned by the city. But, we submit that, as shown by the New York case last above cited, it makes no difference about the ownership of the fee, when the work is done with the written consent or upon the written petition of the property owner, as in the case at bar. If we are correct in the position taken that this petition estopped appellant from claiming damage, then the court erred in not granting us our peremptory instruction, and also erred in refusing the other instructions asked for by us, and in giving plaintiff the instructions asked for by him. We think, therefore, that this disposes of the whole case, and we submit that the case should be affirmed on appeal and reversed upon cross appeal.

ANDERSON, J., delivered the opinion of the court.

The appellant, Robinson, sued the appellee, city of Vicksburg, for damages alleged to have been done his lot and building on Mulberry street, in said city, by the appellee, in raising the grade of said street on the side next to said lot, and recovered judgment for eight hundred and sixty-six dollars and sixty-five cents, from which he prosecutes this appeal, and the appellee a cross-appeal

The appellant bought his lot on Mulberry and Clay streets in 1901, on which he soon thereafter constructed a machine shop, and which he continued to use and operate up to the time of the bringing of this suit. His building was constructed with reference to the grade of Mulberry street as it then existed and had existed for many years, and which continued until the injury complained of, which occurred in 1908. The appellee's charter provides that on the petition of a majority of the

owners of the greater number of lots or parts of lots, or of the owners of the greater number of lineal feet, fronting on any street or alley, the mayor and board of aldermen may pave such street or alley; the city paying the cost of grading and paving the street intersections, together with one-third of the cost of the work, the remaining cost to be paid by the abutting property owners. In 1908 a majority of the owners of lots and parts of lots, who were also owners of the greater number of lineal feet, fronting on Mulberry street, between Grove and Depot streets, petitioned the mayor and board of aldermen to pave that part of Mulberry street. Among the abutting owners who signed said petition was the appellant. Such petition was presented to the mayor and board of aldermen, who thereupon passed an ordinance providing for the paving of Mulberry street as prayed for. The petition of the abutting owners is silent as to the grade on which the paving was to be done. The ordinance, however, adopted in pursuance of the petition, provided that the paving should be done ''on the grade now fixed and established.'' No grade had ever been in fact established by formal act of the municipal authorities. For many years it had stood as it was when changed in 1908. At the time this ordinance was adopted no grade was fixed, nor was there afterwards, by any record entry or order. Mulberry street, between Grove and Depot streets, slopes from east to west, and, before graded and paved in pursuance of this ordinance, was five and one-fifth feet lower on the west than on the east side at the point where it abutted appellant's lot. When his building was constructed, its floor was slightly elevated above the west curb of Mulberry street. In grading and paving the street under this ordinance, the west curb adjoining appellant's property was raised three and one-fifth feet, which appellant claims damaged his lot and building.

99 Miss.—29

The appellee contends that the appellant is estopped to claim damages resulting in the change of the grade of the street, because he signed the petition to the mayor and board of aldermen asking that the street be paved. In 11 Am. & Eng. Ency. of Law (2d Ed.), p. 387, ''estoppel'' is thus defined: ''An estoppel may be defined in a general sense to be a preclusion of a person to assert a fact which has been admitted or determined under circumstances of solemnity, such as by matter of record or by deed, or which he has by an act in pais induced another to believe and act upon to his prejudice.'' Section 17 of the Constitution of 1890 provides that: ''Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof,'' etc. The petition signed by the appellant contained no express waiver. May a waiver be implied from a mere signing of the petition by him? Or may a waiver be implied by his signing the petition with the knowledge that in paving the street the city might find it necessary to change its grade? We think not. In our judgment such conduct ought not to operate as an estoppel. A constitutional right may not be so lightly waived. There is nothing whatever in the petition, nor in the conduct of the appellant as disclosed by the record, which evidenced a purpose on his part to waive his constitutional right to claim damages to his property, caused by raising the grade of the street. Nor is there any evidence tending to show that the city, in passing the ordinance providing for paving the street, was led by the appellant to believe that he would not claim his right to damages for an injury thereby done him.

We approve the language of the supreme court of Alabama, in passing on this identical question, in the case of *Decatur* v. *Scharfenberg*, 147 Ala. 367, 41 South. 1025, 119 Am. St. Rep. 81, as follows: ''We are not of opinion that the petition merely to pave the avenue would be a

waiver of damages growing out of the change in the
grade of the highway, as set forth in the bill.    Such
waiver of a constitutional right ought not to be lightly
inferred, and cannot be clearly derived from the request
to pave the avenue and the agreement to bear a part of
the expenses of the paving.  *Newville Road case,* 8 Watts
(Pa.) 172; *Barker* v. *City of Taunton,* 119 Mass. 392;
*Birdseye* v. *City of Clyde,* 61 Ohio St. 27, 55 N. E. 169;
*Jones* v. *Borough of Bangor,* 144 Pa. 638, 23 Atl. 252.   As
said by the supreme court of Massachusetts in *Barker* v.
*City of Taunton,* 119 Mass. 392:   'It is no bar to the
claim for damages made by the petitioner that he was
one of the original petitioners for the improvement.
That alone is not evidence of an assent that his property
shall be taken for public use without compensation.'
While the court uses the words 'taken for public use,'
the facts of the case show that it was similar to the one
before us, and that damages were claimed for injury to
plaintiff's premises by lowering the grade in the con-
struction of a sidewalk.   There, also, the plaintiff had
merely petitioned for the construction of the sidewalk.

To sustain its position appellee relies on *Texarkana* v.
*Talbott,* 7 Tex. Civ. App. 202, 26 S. W. 451; *Collins* v.
*Grand Rapids,* 95 Mich. 286, 54 N. W. 889; *Vaile* v. *City
of Independence,* 116 Mo. 333, 22 S. W. 695; *Ball* v. *City
of Tacoma,* 9 Wash. 592, 38 Pac. 133.   It is held in those
cases that an abutting owner who joins in a petition to
the municipality to grade or change the grade of the
street is estopped to claim damages to his property
caused by such change of grade.   That principle has no
application to the facts of the case at bar.   Here the pe-
tition did not ask for a change in the grade of the street,
but only that the street be paved.   Whether the princi-
ple declared in those cases is sound this court is not now
called upon to decide.   It follows that the court below
erred in admitting in evidence the paving petition signed
by the appellant.

There was no issue of fact for the jury to try as to appellee's liability for whatever damages appellant suffered by the grade of the street being raised. There is no conflict in the evidence on the question of liability. The facts are undisputed. Under the law the appellee is liable to the appellant for the damages done his property by raising the grade of the street. The court, therefore, erred in refusing to instruct the jury to find for the appellant on the question of liability, as requested in his behalf.

It is contended for appellee that, in view of the fact that the jury found in favor of the appellant on the question of liability, the latter is precluded from complaining of the error of the court in refusing to instruct the jury peremptorily on that question, and in admitting in evidence the paving petition signed by the appellant. This position would be well founded, if it were clear that such error did not prejudice the jury against the right of the appellant to damages. It cannot be said, however, that this is true. By submitting to the jury the issue of liability, along with the paving petition, which could have no other effect than as tending to influence the jury to believe the appellee had done appellant no injury, makes it clear that the jury was unduly hampered in determining the amount of damages appellant was entitled to. The sole question which ought to have been submitted to the jury was the amount of appellant's damages. The erroneous action of the court was calculated to cause the jury, in determining both the question of liability and the quantity of damages, to render a compromise verdict as to the latter. For example: Some of the members of the jury may have thought there was no liability, while others were of opinion there was liability, and appellant ought to have the amount of damages his testimony tended to prove, three thousand dollars, and to adjust this difference a compromise verdict as to the damages may have been the result. To say the least of

it, the error of the court was calculated to produce this result.

From these views, it follows that the case is reversed on direct and affirmed on cross-appeal and remanded.

*Reversed and remanded on direct appeal.*

*Affirmed on cross-appeal.*