## NELSON W. TABOR AND OTHERS vs. THE SCHOONER CERRO GORDO.

A seaman who has attached in a state court the part interest of the master of a vessel in a suit brought for his wages, and has obtained judgment and had the attached interest sold on the execution, is not debarred, the proceeds being insufficient to satisfy his claim, from proceeding by a libel against the vessel in a court of admiralty for the balance of his claim.

IN the United States District Court for the District of Connecticut; in admiralty.

*A. L. Shipman*, for the libelants.

*S. Park*, for the defendant.

TOWNSEND, J. Libel *in rem*. There is no dispute as to the facts in this case. The libelants, with three other seamen, originally brought actions at law in the state court against one Henry G. Chapman, then master of the schooner " Cerro Gordo," and owner of three eighths thereof, for wages as seamen on board the schooner. In these actions the schooner was attached, judgment was rendered in favor of the plaintiffs, and the interest of Chapman was sold, under the execution, to the present claimant. The sale was made subject to certain claims, the only one among them which is of any importance in the consideration of this case

being a mortgage for $1,200, which was afterwards bought by this claimant. He is now the sole owner of the schooner. The amount received by the libelants under the execution sale being insufficient to satisfy their claims for wages, they now seek to recover the balance thereof by a libel *in rem* against the schooner.

The claimant contends that the libelants, by the sale under the execution, waived the right to again proceed against the vessel for the same cause of action. The counsel for the libelants claims that the favor shown by courts of admiralty to the lien of seamen for wages gives them a peculiar right to enforce such lien in this court, and illustrates his claim by the distinction between their lien and the implied lien of the material man.

It is true that seamen are treated as a privileged class, and that, as their services are presumably necessary for the preservation of the *res*, their liens for wages are of the highest rank, and the remedies allowed them for the enforcement of their claims " ought not to be abridged, except in cases of a clear common understanding to that effect." BROWN J., in *Russell* v. *Rackett*, 46 Fed. Rep., 201. But I do not see how these facts can give them any greater rights in the proceedings for the enforcement of their lien. A lien is a *jus in re*. Once acquired, whether by a seaman or by a material man under a state statute, the admiralty will recognize and enforce it, subject only to the rules of priority adopted in its courts. Henry on Admiralty Jurisdiction, 197, 198; *The Lottawanna*, 21 Wall., 558; *The Guiding Star*, 18 Fed. Rep., 263; *The William T. Graves*, 14 Blatchf., 189.

The favor shown to the lien of the seaman does not affect the question of the nature or extent of his remedy, but only that of priority of satisfaction. But the effect of the prior attachment, judgment, and sale on execution, presents a novel and difficult question.

It seems to be settled that the mere fact that the libelants had already brought suit in the state court for the same claim is no bar to this proceeding in admiralty. *The Highlander*, 1 Sprague, 510; *The Brothers Apap*, 34 Fed. Rep., 352;

*The Kalorama*, 10 Wall., 204, 218. If the two suits were pending at the same time, that might be ground for a stay of proceedings. *The Edith*, 34 Fed. Rep., 927; *The John and Mary*, Swabey, 471, 473.

It would seem from some of the cases that a sale by the libelants under the former execution might have operated as a waiver of their lien, provided they had thereby assumed to sell the entire vessel and all rights and interests therein. *The Kalorama*, (*supra;*) *The Mary Morgan*, 28 Fed. Rep., 196, 202. And it makes no difference whether such conduct would operate as an estoppel. Under the doctrine of admiralty applicable to the enforcement of liens, the vendor at the execution sale in such a case would be held to have lost his lien by laches. *The Seminole*, 42 Fed. Rep., 924; *The Scow Bolivar*, Olcott, 478.

But the attachments and sale under the execution affected only the part interest of the defendant therein. The attachments could not interfere with the interest of the mortgagee, for they were subsequent to it. Furthermore, the execution sale was made expressly subject to this mortgage.

The present claimant is not only the purchaser of the execution debtor's interest, but he is also the assignee of the mortgagee. Prior to his purchase of the mortgage the liens of these libelants had already become vested. He therefore acquired the title of the mortgagee subject to these liens. *The Guiding Star*, 18 Fed. Rep., 263. And of course the purchase under the execution did not impair the liens in the absence of laches. *The Gazelle*, 1 Sprague, 378; *The Julia Ann*, id., 382; *Crosby* v. *The Lillie*, 40 Fed. Rep., 368.

It does not appear that the claimant has been in any way prejudiced by the action of the libelants. It does not appear that there have been any laches on their part. The claim accrued between March 9th and April 7th, 1892. The attachment was made on said April 7th, the execution sale was on May 10th, and the libel was filed on June 15th, 1892.

Nor does it appear that they made any misrepresentations, or failed to make any representations which it was their duty to make. *Crosby* v. *The Lillie*, 42 Fed. Rep., 238.

They were not called upon to speak at the execution sale, for they assumed to sell only the interest of Chapman in the vessel. Their present claim is not inconsistent with a waiver, by such sale, of all rights to said interest. *Crosby* v. *The Lillie*, 40 Fed. Rep., 368. Furthermore, the purchaser of a mortgage on a vessel, or of an interest in a vessel, on an execution issuing out of a state court, is presumed to know that such purchases are subject to all existing liens.

These libelants, by their execution sale, waived only their right again to proceed against such portion of the vessel, or interest therein, as had been sold by them. It would seem therefore that they might thereafter enforce their lien in admiralty against the vessel, to the extent of the mortgage interest therein, just as they might have done against the entire vessel in the first instance. In the latter case they would have been entitled, as against the mortgage, to the whole of the fund arising from a sale, by virtue of the priority of their lien.

It may be objected to this conclusion that the lien was waived, and the cause of action merged, by the suit in the state court and judgment thereon. No cases were cited by counsel upon this point except *The Kalorama*, (*supra*,) in which the Supreme Court of the United States suggests the question, but leaves it undecided.

An examination of the authorities shows the differing opinions entertained as to the effect of such proceedings in a state court upon a subsequent action *in rem* in the admiralty. In *Dudley* v. *Steamboat Superior*, and *Sexton* v. *Steamboat Troy*, decided in 1855, Newb. Adm., 176, certain Ohio creditors, having both maritime and non-maritime liens, proceeded to seize the boats under the state water-craft law, by process from the state courts. Afterwards, the boats having been sold under the order of the court of admiralty, and the proceeds paid into the registry of the court, these creditors claimed liens for the full amount of their claims under the state law, whether originally maritime or not, and, the fund being insufficient for the payment of the claims in full, they insisted upon their right to share pro rata with those parties

holding liens originally maritime, who had not made seizures under the state law.

The court suggested that a party who voluntarily waived his admiralty lien, and resorted to the local law for his indemnity and protection, could not resume it at his pleasure, and thereby be re-instated in his original rights, and held that such liens should be postponed to those of parties claiming under their original admiralty liens only. The ground of this decision, as stated by the court, is that a maritime lien existing under a state law must be subordinated in rank and postponed in payment to an original maritime lien of the same class. This view of the law is directly contrary to that expressed in *The Guiding Star*, (*supra*,) where Mr. Justice MATTHEWS holds that a maritime lien for supplies furnished at the home port, "for which a lien is given by the local law, must be placed upon the same footing, in the distribution, with similar claims arising in foreign ports."

In *Stapp* v. *Steamboat Swallow*, 1 Bond, 190, certain material men who had obtained judgments under the Ohio watercraft law, filed the judgments in the admiralty court as evidence of their claims, and maintained that the judgments still retained their original character as maritime liens, and that they should have priority of payment over those not importing such lien, where seizures had been made under state process. Judge BOND says, (p. 190:—) "In the case of *Dudley* v. *Steamboat Superior*, decided in this court some years since, and reported in 1 Newberry's Adm., 176, this question was presented, though not argued; and the court held that a claimant having an original maritime lien, who, instead of asserting and enforcing his claim in the admiralty court, proceeded under the state water-craft law, thereby waived such lien, and occupied in this court a position of equality with those claiming liens solely by virtue of seizures under the state statute. I have no reason to doubt the correctness of the views indicated in the case referred to. It is true I have found no reported case in which this question has been under consideration in any other court. It is, however, clearly consonant with reason and the analogies of law,

that if a party, having an undisputed maritime lien, voluntarily waives it by seeking another remedy, he cannot be reinstated in his original right. His claim against the boat has passed into a judgment, pursuant to the state statute, and before a state magistrate or court, thereby losing wholly its original character as a maritime claim. It results from this view that this class of claimants can have no preference or priorities, except such as belong in common to all those who have made seizures under the water-craft law."

Without discussing the correctness of these views in the light of the later decisions upon the subject of maritime liens, it seems to me that the cases are not controlling upon the present case. In neither case were the parties seeking to merely enforce original admiralty liens against the vessel. They were claiming by virtue of judgments, which, in one case at least, confessedly embraced non-maritime claims, to obtain a priority over other lienors in the distribution of a fund in the registry of the court. The only question before the court was that of priority. The question of merger was not necessarily before the court, it was not argued, and the court in its dictum says that it has found no other case in which this question has been considered. It appears that in the original suits under the water-craft law the proceeding was against the entire vessel and all interests therein. But, irrespective of these questions, it seems to me that the reason for the above statements by the court, and the distinction between these cases and the one under consideration, are to be found in the provisions of the Ohio water-craft law then in force. Statutes of Ohio, Revision of 1854, pp. 185, 186.

Section first provides "that steamboats and other water-crafts * * * shall be liable for debts contracted on account thereof by the master, owner, steward, consignee or other agent, for materials, supplies or labor, in the building, repairing, etc., * * * of such water-craft." Section second provides that "any person having such demand may proceed against the owner or owners or master of such craft, or against the craft itself." The act further provides, when the suit is

against the craft, for seizure, detention and sale, and that "if the proceeds of such sale fall short of satisfying the judgment, the balance shall remain to be collected on execution as upon other judgments."

It will thus be seen that the lien allowed by this law might arise from non-maritime as well as maritime services even when the bill was contracted by the owner, that any deficiency after sale of the craft might be collected on execution, and that the proceeding might be either *in rem* or *in personam.* The remedy, therefore, was even greater than that allowed in a court of admiralty.

And while such a proceeding *in rem* might formerly have been enforced in the state courts, it is now well settled that no such jurisdiction exists, but that admiralty alone can enforce maritime liens by proceedings *in rem. The Belfast,* 7 Wall., 624; *Leon* v. *Galceran,* 11 Wall., 192; *The Lottawanna, supra; The De Smet,* 10 Fed. Rep., 483; *The Guiding Star, supra.*

Now, in order that a judgment may operate as a merger, it is not only necessary that the identical cause of action between the same parties or their privies should have passed into judgment, but also that the plaintiff should have had a full and complete opportunity to recover his whole demand. Black on Judgments, § 675. Thus, in *Toby* v. *Brown,* 11 Ark., 308, it was held that a judgment *in rem* against a steamboat, if unsatisfied, could not be pleaded as a bar to a subsequent action against the owners. The court proceeded on the theory that, as in the proceeding *in rem* no satisfaction could be had against the owners, such proceeding was no bar to a suit in the state court. See also *Durant* v. *Abendroth,* 97 N. York, 142.

Under the water-craft law the plaintiff had a full and complete opportunity to recover his whole demand against the craft and her owners. In this case, as no recovery could be had in the state court against any one or anything except the part owner and his interest, there was no full and complete opportunity to recover the whole demand.

It may further be suggested, in view of the difference be

tween the characters of the two proceedings, that the parties defendant in the two proceedings are not the same, and do not stand in the same relation to the seamen. *The Pioneer*, 21 Fed. Rep., 426.

In *Boynton* v. *Ball*, 121 U. S. R., 466, where there was a judgment on a debt, the court held that, notwithstanding the change in form by merger into a judgment of a court of record, it still remained the same debt. Here the debt for seamen's wages is the foundation of this lien, and as such, if unsatisfied, should, it seems to me, in the absence of laches or misrepresentation, be enforceable against the *res*, which has presumably been preserved by means of the services for which recovery is sought.

This is the view taken in the English cases. Thus in *The Bold Buccleugh*, 7 Moore's Reps., Privy Council, p. 267, this whole question is fully discussed, and the right of one having an admiralty lien to proceed *in rem*, without reference to a prior suit *in personam* in the state court, is upheld, even as against purchasers without notice. And in *The Bengal*, Swabey, 468, Dr. LUSHINGTON, in a case strikingly like the present in all essential particulars, sustained the right to proceed against the vessel, and held that one having a twofold security for his wages, the personal action at common law and the action *in rem* in the admiralty, might avail himself of the second; the first, which he tried, (the personal action), having practically failed to give relief. The personal action had proceeded to judgment against the original owner, but he was bankrupt. Before the commencement of the proceeding *in rem* the vessel had been sold to third parties. See also *The John and Mary*, *supra*.

If the cause of action was not merged clearly the lien was not waived. In *The Gate City*, 5 Biss., 207, Judge BLODGETT says:—" It is a settled principle of admiralty law that a seaman or mariner who has acquired a maritime lien will not be construed as having parted with that lien and waived it by anything short of an express contract or payment."

Let a decree be entered for the amount of the libelants' claims.