[City of Huntsville v. Goodenrath.]

# City of Huntsville *v.* Goodenrath.

*Street Assessment.*

(Decided February 9, 1915.  Rehearing denied April 16, 1915.
68 South. 676.)

1. *Judgment; Correction and Amendment; Errors Apparent.*—Where the record showed that defendant filed a number of pleas, and the demurrer thereto showed that it was filed to all of said pleas except pleas 5 and 8, and the judgment recited that plaintiff demurred to all the pleas except 5, that demurrer .was sustained, and that issue was joined on pleas 5 and 9, the pleadings themselves furnished sufficient record evidence to authorize the court to correct the judgment nunc pro tunc, as the court could not have sustained demurrers to plea 8, where no demurrer was filed thereto, nor could issue have been joined upon plea 9, after demurrer sustained thereto.

2. *Municipal Corporation; Action; Claim; Presentation.*—A claim for injuries to property from the change in a grade of the sidewalk is not governed by section 1275, Code 1907, but by the provisions of 1191, Code 1907, which is but a statute of non-claim, and under which a failure to file.the claim is defensive matter available only by plea of non-claim, and it is not necessary to allege in the complaint the filing of the claim.

3. *Appeal and Error; Waiver.*—Assignments of error not insisted upon in brief or oral argument are deemed waived.

4. *Municipal Corporations; Public Improvement; Assessments; Conclusiveness.*—Construing sections 223 and 225, Constitution 1901, and sections 1359, et seq., 1373, 1377 and 1381, Code 1907, it is held that where a city raised the grade of a sidewalk, constructed a new sidewalk, and assessed part of the cost against plaintiff's property after due notice given, and plaintiff sued for damages to his property from the change of the grade, the determination of the Board of Commissioners was conclusive that the value of plaintiff's property had been increased by the improvement and was a bar to the action of damages, since the Board had no authority to make the assessment unless the property was increased in value as the result of a special benefit.

5. *Eminent Domain; Damages; Measure.*—Where a city takes or injures property without resorting to condemnation proceedings, the measure of damages in a suit for damages by the property owner is the same as it would have been.in the condemnation proceedings had they been resorted to.

6. *Same; Offsetting Benefits.*—Where property is wholly taken or destroyed by a municipality in carrying out a public improvement, the measure of damages is the market value of the property, with no deduction on account of general or special benefits or increase in value to the remaining property from the improvement.

7. *Same.*—Where property is merely injured by a public improvement the measure of damages is the market value thereof before and after the injury, and in ascertaining it there must be taken into consideration not only the diminished value of the property on account of the injury, but also the increased value, if any resulting from special benefits occasioned by the improvement.

8. *Judgment; Conclusiveness.*—Until reversed or annulled in a direct proceeding a judgment is conclusive as to both the law and the facts involved in the issue tried and determined, or necessarily involved in such issue tried and determined before a court of competent jurisdiction.

9. *Same; Judgment In Personam.*—In personam judgments are inter partes, and while conclusive, even as against strangers, as to the fact of their rendition, and the resultant legal consequences, are not binding as to the issues involved except upon the parties and their privies.

10. *Same; Judgment in Rem.*—Judgments strictly in rem are inter omnes, and irrevocably determined the status or title of the res against all persons whether they had other than constructive notice of the litigation, and whether they were parties in fact or not.

11. *Same; Nature of Proceeding.*—The rule as to conclusiveness of judgment applies generally to all varieties of judgment, decrees, or orders made by courts of competent jurisdiction in all kinds of judicial proceedings.

12. *Same.*—Such rules apply to all kinds of courts or legal tribunals, when acting judicially under authority of law, as to matters within their jurisdiction, and to officers and boards of state or municipal officers so acting under such conditions or circumstances that their decisions have the force and effect of judgments.

13. *Same; Matters Concluded.*—It is not the identity of the cause of action which determines the conclusiveness of a former judgment upon a subsequent suit, but the identity of the issues involved in the two proceedings, and if the issue presented in a subsequent suit between the same parties or their privies has been determind in a former one, the question is res judicata, though the actions are based on different grounds or tried on different theories, or are instituted for different purposes or seek different relief.

14. *Municipal Corporations; Public Improvement; Assessment; Collateral Attack.*—In assessing benefits the determination of a city board of commissioners that the value of abutting property had been increased by a public improvement, could not be impeached in a collateral action to recover damages claimed to have been caused by the improvement, by showing that the value of the property was diminished rather than increased.

15. *Same; Review by Court.*—Where the city board, upon filing of a protest or objection to an assessment of benefit from a sidewalk improvement, are still of the opinion that the value of the property has been increased, the property owner may, under sections 1359, et seq., Code 1907, appeal to the circuit court or court of like jurisdiction to have that issue determined by a jury.

16. *Constitutional Law; Due Process; Public Improvements; Notice.*—Where notice of an assessment of benefits from a public improve-

[City of Huntsville v. Goodenrath.]

ment is published in a newspaper as required by section 1377, Code 1907, the constitutional requirement of due process of law is met.

(Brown, J., dissents.)

APPEAL from Madison Circuit Court.

Heard before Hon. D. W. SPEAKE.

(This case was reviewed by certiorari to the Court of Appeals and will appear in 194 Ala. It appears as *Ex parte Gudenrath, in re City of Huntsville v. Gudenrath,* in 69 South. 629. The Supreme Court denied the writ in an opinion as above stated.—Reporter.)

Action by Otto Goodenrath against the City of Huntsville. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The following is the complaint: (1) Plaintiff claims of defendant * * * damages for that during and prior to May, 1912, and now, plaintiff was and is the owner of the following described real estate in the city of Huntsville, * * * on which is situated, and has been at all of the time aforesaid, one brick storehouse used for business purposes, and on or about the month of May, 1912, defendant, a municipal corporation under the laws of Alabama invested by law with the privilege of taking property for public use, and with full authority to improve, grade, construct, and repair the streets of the city of Huntsville, did repair the streets of the city of Huntsville, did raise and cause to be raised the grade of the sidewalk on the east side of Washington street in front of and on which said storehouse abuts or fronts, about 11 inches above and higher than the former grade, and constructed or caused to be constructed a new sidewalk on said raised grade, thus placing the ground floor of plaintiff's building about 11 inches below the sidewalk, rendering said store more difficult of access and entrance, and greatly diminish-

ing the value of plaintiff's said property before making just compensation to plaintiff therefor, to plaintiff's damages.

(2) Same as 1 down to and including description of the property, with the added allegation that defendant at or about the time aforesaid raised or elevated, or caused to be raised or elevated, the sidewalk in front of said property about 11 inches above the ground floor of said storehouse, thereby greatly injuring and reducing the value of said store and property, to plaintiff's damages.

DAVID A. GRAYSON, for appellant.

S. S. PLEASANTS, for appellee.

THOMAS, J.—After the record was filed here and before the submission of the case, a writ of certiorari was issued by order of this court, at the instance of appellee, directing the clerk of the lower court to certify and forward to this court, as a part of the record and proceedings in this case, a judgment of the lower court amending and correcting nunc pro tunc the judgment appealed from, so as to make the latter truthfully speak the judgment of the lower court. The particulars of the amendment and correction had reference solely to the matter as to what were the pleas upon which issue was joined and as to what were the pleas to which a demurrer was sustained.

(1) It appears from the record that the appellant filed in answer to the action 13 pleas—one numbered A, and the others numbered, respectively, from 1 to 12 consecutively. It further appears conclusively from the face of the only demurrer filed to defendant's pleas that it was filed only to pleas A and 1, 2, 3, 4, 6, 7, 9, 10, 11, and 12 and was not filed to pleas 5 and 8—the former

(5) setting up the statute of nonclaim (Code, § 1191), and the latter (8) the general issue. The original judgment, however, incorrectly recites in this particular that: "Plaintiff demurs to pleas numbered 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, and 12, and A, which said demurrer being submitted to and duly considered by the court, it is ordered and adjudged that said demurrer be and the same is hereby sustained, whereupon issue being joined on pleas 5 and 9, thereupon came a jury," etc.

The judgment, as amended nunc pro tunc, recites in correction of the former that: "Plaintiff demurs to pleas 1, 2, 3, 4, 6, 7, 9, 10, 11, and 12, and A, which said demurrer being submitted to and considered by the court, it is ordered and adjudged that said demurrer be and the same is hereby sustained, whereupon issue being joined on pleas 5 and 8, thereupon came a jury," etc.

It is contended by appellant, who objected and excepted to this action of the court in so correcting or amending at a subsequent term the former judgment entry, that there was no record evidence justifying or authorizing such amendment and correction. But we think it a sufficient answer to this contention to say that the pleadings themselves, which are certainly a part of the record, show conclusively the error in the recitals of the original judgment entry and the correctness of the recitals of the amended judgment entry. The court could not, as recited in the former, have sustained a demurrer to plea numbered 8 (the general issue), as the pleadings show that no demurrer was filed to such plea; nor could issue have been joined on plea 9, as recited, for a demurrer had been filed to this plea and had been sustained, as previously so recited in the said entry itself. The issue was therefore joined on plea 8 (the general issue), as recited in the amended entry, and not

on plea 9 as recited in the original entry, and on plea 5 as recited in both entries. The record evidence was ample, we think, to justify the correction made, and we shall consequently treat the amended judgment as the real judgment of the court, which relieves the necessity for any consideration of the question presented under the judgment in its original form as to whether it was reversible error for the court to sustain a demurrer to a plea of the general issue.—*Montevallo Coal Co. v. Reynolds,* 44 Ala. 252; *Seymour v. Harrow Co.,* 81 Ala. 250, 1 South. 45; *Cunningham v. Fontaine,* 25 Ala. 644; *Jones v. Woodstock Iron Co.,* 95 Ala. 555, 10 South. 635; *Tobias v. Triest,* 103 Ala. 644, 15 South. 914; *Mill Co. v. Smith,* 78 Ala. 108; *Central of Ga. Ry. Co. v. Carleton,* 163 Ala. 62, 51 South. 27; *Merrill v. Sheffield,* 169 Ala. 242, 53 South. 219; *L. & N. R. R. Co. v. McCool,* 167 Ala. 644, 52 South. 656.

We come, then, to a consideration of the main case, which is an appeal on the record proper, without a bill of exceptions, and requires a review only of the action of the court in overruling appellant's demurrers to the complaint and in sustaining appellee's demurrers to appellant's said pleas filed to the complaint.

The complaint, comprising two counts, will be set out in the report of the case. No ground of the demurrer to it seems to be insisted upon except ground 5; and, while we are of opinion that none of the grounds contain merit, we shall, for the reason stated, confine our discussion to said ground 5, which raises the point as to whether or not, when the demand against a municipality is of the character here sued on, it is necessary for the complaint to allege the filing of a statement of such demand with the city authorities before bringing the suit.

(2) Section 1275 of the Code is by its express terms confined in its operation to claims or demands against a city for personal injuries received; and, while it has been held that a compliance with its requirements as to filing a sworn statement of the claim or demand with the city authorities is a prerequisite to the right of bringing a suit thereon and must be averred (*Brannon v. Birmingham,* 177 Ala. 419, 59 South. 63; *New Decatur v. Chappell,* 2 Ala. App. 564, 56 South. 764,) yet such section has no application to the case at bar for the reason that this action is not founded upon a claim or demand for personal injuries, but for injury to property. Such a claim or demand as the latter falls within the provisions of section 1181 of the Code, which likewise requires a filing of a statement of it with the city authorities; but in construing the section it has been held both by this court and the Supreme Court that the section is similar to the statute of nonclaim applicable to administrators, and that a failure to file the claim is defensive matter property available only by plea.—*Anderson v. Birmingham,* 177 Ala. 303, 58 South. 256; *Birmingham v. Darden,* 1 Ala. App. 479, 55 South. 1014. Hence it was not necessary for the complaint in this case to allege a filing of a statement of the demand sued on with the city authorities before bringing suit.

(3) To all the numerous pleas filed by appellant (defendant below) demurrers were sustained, except as to pleas 5 and 8, as before stated, to which no demurrer was filed; but none of the several assignments of error predicated upon the action of the court in sustaining such demurrers seems to be insisted upon by appellant's counsel in brief, except as to plea A, and they are consequently waived. Besides, we may add, they are, in our opinion, without merit.—*Fitts v. Phoenix Auction Co.,*

153 Ala. 635, 45 South. 150; *Harper v. Raisin Fert. Co.,* 148 Ala. 360, 42 South. 550; *Hodge .v. Rambo,* 155 Ala. 175, 45 South. 678; *Western Ry. Co. v. Russell,* 144 Ala. 142, 39 South. 311, 113 Am. St. Rep. 24; *Williams v. Spragins,* 102 Ala. 424, 15 South. 247.

(4) Plea A sets up, in alleged former adjudication. of the issue here involved, the proceedings of the board of commissioners of defendant city, had (before this suit was brought) under the authority of the provisions of the Municipal Code (Code, § 1359 et seq.), and from which it appears that such board, after determining upon the improvement of the street (the raising of the grade of which, in executing the improvements, caused the injury to plaintiff's property here complained of), assessed against plaintiff's said property, which abutted thereon, the sum. of $37.80 as the proportion of the cost of the improvements that it was adjudged by the board, after giving the notice required by the statute (Code, § 1377), said property was to bear. The issue before such board, as fixed by the law, was whether the value of such property had been increased or not as the result of the street improvements, considering, in so determining, special, but not general, benefits. If not increased, which was a matter for the board to determine, then the jurisdiction of said board ceased, for in such event no assessment whatever could have lawfully been made by said board against the property. Only in case the board found that, as the result of special benefits derived from the improvements, the value of the property had been increased, could they levy any assessment at all upon it, and then not in excess of such increased value; for, says the Constitution, § 223: "No city, town, or other municipality shall make any assessment for the cost of sidewalks or street paving, * * * in excess

[City of Huntsville v. Goodenrath.]

of the increased value of such property by reason of
\* \* \* special benefits derived from such improve-
ments."

. To the same effect is section 1373 of the Code.—Con-
stitution, § 223; Code, § 1373; *Duke v. Anniston,* 5 Ala.
App. 348, 60 South. 447; *Decatur v. Brock,* 170 Ala.
149, 54 South. 209; *Harton v. Avondale,* 147 Ala. 458,
41 South. 934; *Birmingham v. Wagenseler,* 168 Ala. 344,
53 South. 289.

When, therefore, said board of commissioners of de-
fendant city, after complying with the provisions of the
statute (Code, § 1359 et seq.) with respect to street im-
provements and assessments therefor, assessed the sum
of $37.80 against the property here alleged to have been
injured as a result of the improvements, it necessarily
determined that on the whole—not considering, of course,
general benefits—the value of said property had as a
result of the work not been decreased, but increased,
at least to the extent of $37.80. And in reaching such
conclusion, necessarily they would be required to weigh,
and it must be presumed did weigh and take into the
calculation also all special injury or detriment the prop-
erty had suffered as a result of the work, and deduct
the amount of such special injury or detriment from
the value of the special benefits such property had sus-
tained; for without this they could not rightfully have
said that upon the whole its value had been increased
because of special benefits derived from the improve-
ment. If the amount of the injury done the property
exceeded the value of the special benefits it sustained,
certainly it cannot be said that the value of the prop-
erty was increased as a result of the improvements.

As said by our Supreme Court in *Birmingham v. Wag-
enseler,* 168 Ala. 349, 53 South. 289: "Under the rules

of law governing such matters, the same work could not be both a benefit and a detriment to the property [in a case where general benefits are not to be considered]. To determine whether there was a benefit or a detriment to the property, the test is whether the work done increased or diminished the value of the property [not considering general benefits]. If it increased the value of the property, then the assessment, not exceeding the benefit on the one hand or its proportionate share of the expense on the other, would be proper and legal. On the other hand, if said work diminished the value of said property by making it more inaccessible, then the owner of the property would be entitled to damages."—*Birmingham v. Wagenseler, supra.*

The complaint here, as will be observed from reading it in the report of the case, is for damages, alleging a special injury to the property, in that the work rendered the property more inaccessible, in that the grade of the sidewalk was thereby raised 11 inches above the level of the ground floor of plaintiff's store located on the property; and is predicated upon section 235 of the Constitution of 1901, which, to the extent below quoted, is the same as section 7, art. 14, of the Constitution of 1875, and provides, among other things: "Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as * * * provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction," etc.

In construing and applying this provision of the Constitution, our Supreme Court have held that the raising or lowering of the grade of a street by a city, result-

ing in making more inaccessible private property abutting thereon, furnishes a right of action therefor to the owner of such property, unless, of course, the damages have previously been ascertained and paid under condemnation proceedings instituted by the city.—*City Council of Montgomery v. Maddox,* 89 Ala. 181, 7 South. 433; *Avondale v. McFarland,* 101 Ala. 381, 13 South. 504; *Arndt v. Cullman,* 132 Ala. 551, 31 South. 478, 90 Am. St. Rep. 922; *McEachin v. Tuscaloosa,* 164 Ala. 263, 51 South. 153; *New Decatur v. Scharfenberg,* 147 Ala. 367, 41 South. 1025, 119 Am. St. Rep. 81; *New Decatur v. Smith,* 148 Ala. 682, 41 South. 1028.

(5-7) When condemnation proceedings have not been resorted to by the city and suit is consequently brought by the property owner, as here, the measure of his damages is, of course, the same as it would have been in the condemnation proceedings had they been resorted to, and is, as to property wholly "taken" or "destroyed" by the municipality in carrying out the improvements, the market value of such property, from which value there can be no deduction on account of either any general or special benefits or increase in value that may have resulted to the remaining property from the improvements; but where the property is "injured" merely, as is here alleged, then the measure of the damages is the difference between the market value of the property so injured before and after the injury—in ascertaining which, however, there must be taken into consideration not only the decreased value of the property on account of the injury, but the increased value, if any, resulting from special benefits occasioned by the improvements.—*Eutaw v. Botnick,* 150 Ala. 433, 43 South. 739; *Montgomery v. Maddox,* 89 Ala. 181, 7 South. 433; *A. & F. R. R. Co. v. Burkett,* 42 Ala. 83; *Jones v. New*

*Orleans R. Co.*, 70 Ala. 232; *C. & W. R. Co. v. Withe-
row*, 82 Ala. 194, 3 South. 23; *Hooper v. S. & R. R. Co.*,
69 Ala. 529.

The issue in the present action, then, is the same as
was the issue before said municipal assessing board, to
wit: Has the value of plaintiff's property, so alleged to
have been injured, been on the whole increased or dimin-
ished as a result of the improvements, after consider-
ing both the detriment or injury done the property and
the special benefits derived to it from such improvements
and setting off the one against the other? Only in case
its value has been diminshed—that is, that the amount
of the injury exceeds the value of the special benefits—
can the plaintiff recover.—Authorities supra.

The said board of commissioners of defendant city, as
alleged in said plea A, determined, before this suit was
brought, this issue against the plaintiff, and found, as
seen, that the value of the property had been increased
as a result of the improvements, after setting off, as
they necessarily did, against the injury done it, the spe-
cial benefits it sustained. Does not their adjudication
therefore, when properly pleaded, estop the plaintiff
from now bringing the correctness of that decision into
question in this, a collateral proceeding between him and
the city? The vital issue there was, as seen, the same
as the vital issue here, and the board there had juris-
diction, as seen, to determine that issue. They held
that the value of the property had been increased, and
not diminished. Of course, as before said, if said board
had found that the value of the property had been di-
minished, rather than increased, after setting off the in-
jury against the special benefits, then their jurisdiction
would have ceased, since they had not, under the law,
any power or authority to assess or award the plaintiff

[City of Huntsville v. Goodenrath.].

any damages, but as to these needs leave him to pursue a right of action, as here, unless the city first proceeded with condemnation proceedings. But the board did have power and authority to determine whether the value of the property had been increased or diminished, and this by weighing the injury done it against the special benefits received; because such a determination was, as seen, absolutely necessary to the jurisdiction conferred by law upon them to assess or not assess the property—their right to assess depending solely upon the fact, if a fact, that the value of the property had been increased as a result of the special benefits.—Constitution, § 223; Code, § 1373; *Birmingham v. Wagenseler, supra.*

(8-10) It has become a fundamental principle regarding judgments that an issue once in fact tried and determined or necessarily involved in the issue that was tried and determined before a court of competent jurisdiction is, until reversed or annulled by direct proceeding, conclusive as to both the law and the fact involved in the issue.—*S. & N. R. Co. v. Henlein,* 56 Ala. 368. To what extent, as to the persons so concluded, depends upon the character of the judgment whether it is one in personam or one in rem. Judgments "in personam" are inter partes and though conclusive even against strangers as to the fact of its rendition and the resultant legal consequences are not binding as to the issues involved (the trial of which resulted in the judgment) except upon parties and their privies; while judgments strictly "in rem" are inter omnes by virtue of the power and control of the state over the res and irrevocably determine its status or title against all persons irrespective of whether they had any other than constructive notice of the litigation or whether they were parties in

fact or not.—24 Am. & Eng. Ency. Law, 827-829; Id. 755.

(11-13) This rule as to the conclusiveness of judgments applies generally to all varieties of judgments, decrees, or orders made by courts of competent jurisdiction, in all kinds of judicial proceedings, such as, among others, eminent domain proceedings, attachments, garnishment, foreclosure, partition, tax judgments, adjudications in bankruptcy, etc., and to all kinds of courts or legal tribunals, when acting judicially under authority of law and as to matters within their jurisdicton, and to officers and boards of state or muncipal officers so acting and under such conditions or circumstances that their decisions have the force and effect of judgments. —23 Cyc. 1056, 1115. And it is not the identity of the cause of action which determines the conclusiveness of a former judgment upon a subsequent suit, but merely the identity of the issue involved in the two proceedings. If an issue presented in a subsequent suit between the same parties or their privies is shown to have been determined in a former one, the question is res judicata, although the actions are based on different grounds or tried on different theories, or are instituted for different purposes and seek different relief.—24 Am. & Eng. Ency. Law, 780, 781.

The issue, as before pointed out, before defendant's board of commissioners, and the issue here, is the same upon the question as to whether the value of the property injured was, when setting off against such injury the special benefits derived from the improvements, increased or diminished in value on the whole—a question which said board there had necessarily to determine as a basis for deciding whether or not an assessment could be levied upon the property for any portion of the costs

of the improvement (*Birmingham v. Wagenseler, supra*), and a question which the jury here has necessarily to determine as a basis for deciding whether or not the plaintiff is entitled to recover at all (*Eutaw v. Botnick, supra*). The board there, as seen, determined that its value had been increased at least to the extent of $37.80, and the effect of their judgment was by operation of law to create a lien upon the property in favor of the defendant city for that sum, which lien might be en-forced by the city in the manner provided by the statute or sold and transferred or assigned to another.—Code, §§ 1384-1387.

(14) The plaintiff cannot in this, a collateral action, be heard to impeach that judgment by saying, as he does in effect do in this suit, that the value of the property has been diminished and not increased, after setting off against injury done the special benefits received, and that, instead of the city's having a lien upon such prop-erty for the amount of the assessment, the assessment is void because the value of the property was in fact di-minished rather than increased, and that the city owes him damage as a result of the work, rather than that he owes or his property is bound to the city for the amount of the assessment. Suppose the city had en-forced, as authorized by statute, its alleged lien upon the property, and the property had been sold, could the plaintiff here maintain ejectment against the purchas-er, provided the proceedings of the defendant city's board of commissioners leading up to the assessment were not void? No suggestion is made by demurrer or otherwise but what those proceedings were had in full compliance with every requirement of the statutes be-fore cited as governing such matters; hence we are as-suming, without pausing to inquire into, the validity

of those proceedings. Of course, if those proceedings were void, then they could be assailed in any collateral action.—24 Am. & Eng. Ency. Law, 829. The demurrer, as said, does not invite the consideration of this question, but, confessing the validity of the proceedings, it asserts that the issue here was not involved and was consequently not adjudicated there. This is the sole insistence of appellee's counsel; and the authorities cited (*Birmingham v. Wagenseler* and *Eutaw v. Botnick, supra*) show, we think, that he is in error.

(15) It appears from the plea that notice of the assessment as required by section 1377 of the Code was given. The plaintiff could under the law have thereupon filed a protest and objection to the assessment, insisting, as here, that the value of his property, considering injury suffered against special benefits sustained, had been diminished rather than, as the board had found, increased; and if, upon the hearing by the board of such protest or objection, they still were of opinion that the value of the property had upon the whole been increased, not considering general benefits, plaintiff had the right to appeal to the circuit court, or court of like jurisdiction, and have the issue determined by a jury (Code, § 1359 et seq.; *Huntsville v. Pulley,* 187 Ala. 367, 65 South. 405), and if the jury had found in his favor no assessment whatever could have been made against his property, and he likewise would not have been foreclosed from bringing the present action for the injury done it.

(16) Section 1381 of the Code makes his failure to file a protest or objection, which is the case here, an estoppel and in effect precludes him from thereafter saying that the value of his property had not been increased and was not therefore subject to the assessment.—*Birmingham v. Wills,* 178 Ala. 198, 59 South. 173; *Birming-*

*ham v. Abernathy,* 178 Ala. 221, 59 South. 180; *Garner
v. Anniston,* 178 Ala. 430, 59 South. 654. The proceed-
ings were in rem, it is true, and were based, as to no-
tice, solely on a notice given by publication in a news-
paper published in defendant city, where the property
was located, and not by any personal notice served on
plaintiff; yet such notice met, as seen, the requirements
of the statute (Code, § 1377), and also of the "due pro-
cess" provisions of the Constitution as pointed out in
cases below cited; and the proceedings, resulting in the
judgment of the board assessing the property, fixed the
status and the issue, without a determination of which
such status could not in the nature of things have been
so fixed (that is, that the value of the property had been,
after leaving out of the consideration general benefits,
but considering special benefits and injury, increased
and not diminished by reason of the improvements), is,
we think, to this extent binding on the plaintiff as the
owner of the property and on all the world, until re-
versed or annulled by appeal or other direct proceedings
taken to that end.—*Friedman & Loveman v. Shamblin,*
117 Ala. 454, 23 South. 821; *Birmingham v. Wills, su-
pra; Birmingham v. Abernathy, supra; Garner v. An-
niston, supra; Birmingham v. Wagenseler, supra; Eu-
taw v. Botnick, supra; Decatur v. Scharfenberg,* 147
Ala. 367, 41 South. 1025, 119 Am. St. Rep. 81; *Deca-
tur v. Smith,* 148 Ala. 682, 41 South. 1028; *Birmingham
v. Klein,* 89 Ala. 461, 7 South. 386, 8 L. R. A. 369; Con-
stitution, §§ 235, 238; Code, § 1359 et seq.; *Moore v. Cot-
tingham,* 113 Ala. 148, 20 South. 994, 59 Am. St. Rep.
100; *Lyons v. Hamner,* 84 Ala. 197, 4 South. 26, 5 Am.
St. Rep. 363; 4 Myf. Dig. 728; 5 Mayf. Dig. 845; 6 Mayf.
Dig. 796; 24 Am. Eng. Ency. Law, 827-829, 755; 3 Cyc.,
under the title "Judgments."

Certainly, under the authorities cited, there can be no question but what such judgment is binding to the extent that it fixed the status of the property as to the fact of defendant's city lien upon it, and that it forever precludes the defendant and all other persons from gainsaying in any collateral proceeding the existence of such lien; but the real and serious question is: Does that judgment conclude the plaintiff from denying the facts upon which it and the resultant lien are predicated, without which the law, as seen, authorizes neither the judgment nor the lien, and which were, as before pointed out, necessarily determined against the plaintiff by defendant's said board as a foundation for the judgment and lien?

From Mayfield's Digest, vol. 6, p. 796, treating of the subject of res judicata, we take the following as there quoted approvingly from 11 Eng. Ruling Cas. 46, and supported in 1 Black on Judgments, § 795, to wit: "It is commonly said that such a judgment [a judgment in rem] 'binds all the world.' It is more accurate to say that such a judgment is conclusive against any person in a subsequent controversy, where the grounds of the adjudication, or the fact of its rendition, or any of its legal consequences, become relevant and material facts."

In *Durant v. Abendroth*, 97 N. Y. 140, the court said: "The general rule as to proceedings in rem is that when the property is within the jurisdiction of the court pronouncing the judgment, whether a domestic or foreign tribunal, whatever the court settles as to the right or title, or whatever disposition it makes of the property, is valid in every country. * * * But it is not universally settled that the judgment is conclusive as to the facts or allegations on which it is founded."

We take it therefore to be the general rule, subject to exceptions, that a judgment in rem is conclusive not

only as to the matters actually declared and expressly
determined, but also with respect to the grounds or facts
upon which such judgment is founded.—Van Fleet's
Former Adjudication, vol. 2, p. 1022, § 515 et seq.; cases
cited in 11 Am. Dig. (Dec. Ed.) p. 803 et seq.

We find no legal reason why the general rule should
be departed from in this case.—Elliott on Roads &
Streets, §§ 731, 732 and note, 746-748; 23 Cyc. 1220,
1408-1410.

Of course, as before pointed out, where a person's prop-
erty is wholly taken or destroyed by the city in making
the improvements, no assessment by the city against
remaining property of that person would estop him from
suing for the value of his property that had been whol-
ly taken or destroyed; but where real estate is injured
merely, as is the case here, as the result of the work done
in carrying out the improvements, then, when the assess-
ing board of the municipality makes an assessment
against the property in pursuance of law for its propor-
tionate cost of the improvements, it must be presumed
that in doing so they first reached a conclusion that the
value of the property had as a result of the improve-
ments been on the whole increased, after considering,
as the law requires, not any general benefit derived to
the property from the improvement, but all special ben-
efits sustained and all injury and detriment suffered,
and that they weighed the one against the other and
found that the value of the special benefits exceeded
the amount of the injury and detriment done; and as a
consequence that the value of the property had been in-
creased as a result of the special benefits derived from
the improvements.—*Birmingham v. Wagenseler, supra;*
Constitution, § 223; Code, § 1373.

This being also the main issue in this suit (*Eutaw v.
Botnick, supra*), we are of opinion the court erred in

sustaining the plaintiff's demurrers to defendant's said plea A, and for this reason the judgment is reversed.

Reversed and remanded.

BROWN, J.— (Dissenting.)—The plaintiff rests his right to recover damages on the provisions of section 235 of the Constitution, and defendant's plea A undertakes to set up as a defense to this action an estoppel resulting from the provisions of section 1381 of the Code; the substance of the plea being that the city authorities of Huntsville, proceeding under the provisions of chapter 32, art. 26, of the Code, authorizing cities and towns to make internal improvements and to levy and assess the costs thereof against private property, constructed a sidewalk in front of plaintiff's property, and, in apportioning the assessment thereof, made an assessment against plaintiff's lot abutting said sidewalk amounting to $37.80, and gave the statutory notice that a roll had been made up and was open to inspection, and that, after the expiration of 20 days, the city council would hear objections to such assessments; and, no objection having been filed, the assessment was made final by the city council, and therefore plaintiff is forever precluded from asserting that his property was damaged by said improvement. The trial court sustained a demurrer to this plea, and this ruling of the court presents the only question of vital importance on this appeal.

When the nature of the estoppel here sought to be set up, and the scope of the issues embraced in the proceedings before the city council, are understood, it is clear that the matter set up in this plea is not a defense to plaintiff's action. The theory of the appellant is that the proceedings before the city council are res judicata and preclude any further inquiry into the question as

to whether or not the plaintiff's property was damaged by the construction of the sidewalk, that question being necessarily determined by the action of the city council resulting in the assessment made—in other words, that no assessment at all could be made unless, as a result of the work, a general benefit resulted and the value of the property was enhanced, or at least no depreciation in value was occasioned thereby. This contention shows a misapprehension of the nature of the estoppel afforded by the provisions of section 1381 of the Code, and of the questions determined by the city council.

The reasons upon which the doctrine of res judicata rests presuppose that the matter to which it is applied has been determined between the same parties by a court of competent jurisdiction—a court created by the Constitution or by the Legislature with jurisdiction of the subject-matter, and with power to determine the entire controversy and award to the parties such relief as under the law they are entitled to (Black on Judgments, 675; *Tabor, et al. v. The Cerro Cordo* [D. C.] 54 Fed. 395; *Burke v. McDonald,* 2 Idaho [Hasb.] 339, 13 Pac. 351, 360; *In re Norton,* 64 Kan. 842, 68 Pac. 639, 91 Am. St. Rep. 255; 2 Words and Phrases, 1360; Cooley on Const. Lims. [7th Ed.] 79-84)—that such court was presided over by a judge free from personal interest in the controversy and legally indifferent between the parties (*Ex parte Cornwell,* 144 Ala. 498, 39 South. 354; *Gill v. State,* 61 Ala. 172; Freeman on Judgments, § 145); and that the matter involved in the two suits is the same, and the issues in the former suit were broad enough to comprehend all the issues involved in the second suit (*Wood v. Wood,* 134 Ala. 557, 33 South. 347; *Gilbreath v. Jones,* 66 Ala. 132). However, if the issues in the first case are not broad enough to cover the

controversy in the second suit, or if that controversy is not necessarily included in the first suit, a party is not concluded by the judgment as to matters not embraced within the issues.—*Davis v. Davis,* 65 Miss. 498, 4 South. 554; *Doonan v. Glynn,* 28 W. Va. 715; *Lorillard v. Clyde,* 99 N. Y. 196, 1 N. E. 614; Black on Judgments, § 675. If the second action involved the same property and more, the judgment is conclusive only as to those issues which were actually tried and determined in the first suit.—*Foye v. Patch,* 132 Mass. 105.

Applying these well-settled principles to the facts of this case, it is apparent that the matter set up here as an estoppel does not measure up to these requirements. The statute provides: "In case of sidewalk improvements, including curbing, the costs, or any part thereof, or the improvement of the street or avenue corner, may be assessed against the lots abutting on or nearest said improvement, and the entire cost or any part thereof of the improvement at the intersection of any alley with a street or avenue, or other highway, may be assessed in fair proportion against the respective lots or parcels of land abutting or cornering on the alley at such intersection; provided, however, that in no case shall the assessment against any lot or parcel of land be greater than the increased value of such lots or parcels of land by reason of the special benefits to be derived from such improvement."—Code 1907, § 1373.

It thus appears that the authority of the city board is limited to assessing the costs of the entire improvement and apportioning the same against the respective lots or parcels of land abutting or cornering on the street, with the limitation that in no case shall the assessment against any lot or parcel of land be greater than the increased value of such lot or parcel of land by reason of the special benefits to be derived from such improve-

ment, and to determining whether errors or omissions have intervened. It has no authority to pass upon the question of general detriment to the property, or to compel just compensation to be made, or to award damages for injury suffered by the property owner as a result of the improvement; and if the proceedings of the board are to be treated as res judicata, and preclude further inqury into such matters, the result necessarily follows that the property owner must be subjected to a course of litigation, attended with costs and annoyance, at the end of which, if successful, he is awarded no relief except that he has a right to begin the litigation again and fight it out in a different suit before a court of competent jurisdiction. In addition to this, the supposed court of original jurisdicton, before whom he must first litigate, is constituted of the parties representing an adverse personal interest to the property owner, possessed of all the infirmities of human nature, which "at best is weak," and incapable of maintaining perfect equipoise in administering justice between the parties. —*Ex parte Cornwell,* 144 Ala. 499, 39 South. 354. Such a tribunal cannot measure up to the requirements of the law as a court of competent jurisdiction.—*City of Huntsville v. Pulley,* 187 Ala. 367, 65 South. 407.

An epitome of the provisions of the statute regulating the proceedings may be found in the opinion of the court in the case of *City of Birmingham v. Wills,* 178 Ala. 204-206, 59 South. 173, which is referred to as a basis for the conclusions hereafter stated in connection with the observation that the statute, after providing for the assessment roll and the publication of notice, the contents of which are prescribed by the statute in substance: That the assessment roll has been delivered to the city or town council, and is open for inspection in the office of the person authorized to make collections

of the assessments, giving the time and place not less than 20 days from the date of publication at which the city board will meet to hear and determine objections or defenses to such assessment or the amount thereof, the notice to state the general character of the improvement, the terminal points thereof, and the streets, avenues, and alleys or other highways or portions thereof along which the improvements have been constructed, and if the improvements made consist of sanitary or storm water sewers system, the notice shall describe the territory or area drained by such sewer or sewers by naming the streets, avenues, and alleys or the highway or other lines by which such district is bounded. Section 1381 provides: "The owners of any real estate or and interest therein, which it is proposed to assess for the cost, or any part thereof, of said improvement, may appear at any time on or before the date named in said notice, or at said meeting, and file in writing with the clerk or in his office any objections or defense to the proposed assessment against said property, or to the amount thereof, and persons who do not file objections in writing or protests against such assessment shall be held to have consented to the same."

Which is followed by section 1384, which provides: "At such meeting or any adjourned meeting the council shall proceed by order or resolution to fix the amount of the assessment against each lot or tract of land de scribed and included in said assessment roll, and all such assessments, from the date of such order or resolution, shall be and constitute a lien on the respective lots or parcels of land upon which they are levied superior to all other liens, except those of the state or county for taxes."

It is clear from these statutory provisions, in the absence of objection or defense interposed by the property

owner, that the proceedings authorized by the statute are purely in rem, and that no personal judgment is authorized or could be rendered against the property owner. And, furthermore, it is clear that, in the absence of objection or defense interposed by the property owner, the assessment is to be made by the city board as a matter of course, and that the sole purpose of the provision of the statute that "the assessment shall not exceed the increased value of such property by reason of the special benefits derived from such improvement" was to maintain its constitutional integrity and bring it in harmony with section 223 of the Constitution, which fixes a limitation upon such assessments and affords a defense to the property owner against them, which he may interpose or waive by his failure to appear. The statute does not make the property owner a party and provides no machinery for that purpose further than that it affords him an opportunity to voluntarily appear and interpose objections as a predicate for a defense which the statute contemplates he must make in the circuit court on appeal from the resolution of the city board fixing the assessment against the property, and that defense is limited to two questions: (1) "Whether errors or omissions, not waived by a failure to object before the council or municipal board, have intervened, and, if so, with what effect." And (2) "Whether the assessment exceeds the special benefits derived by the property from the improvement."—*Garner v. City of Anniston,* 178 Ala. 345, 436, 59 South. 654.

These defenses are not available in the absence of objection on the part of the property owner, and are not within the issues determined by the city board.

The defendant's plea A does not aver that the plaintiff was a party, or in privity with any one who was a party, to the proceedings before the city board, and

shows that there was no issue presented in that pro-
ceeding that determined the issues presented by the
plaintiff's complaint in this case, and therefore the mat-
ter set up in the plea is not res adjudicata of the issues
in this case.—*Holland v. Fairbanks-Morse Co.,* 166 Ala.
198, 51 South. 931; *Durant v. Abendroth,* 97 N. Y. 132;
*Phillips v. Thompson,* 3 Stew. & P. 369; *Schroeder v.
Lahrman,* 26 Minn. 87, 1 N. W. 801. The proceeding
under the statute is strictly ex parte and in rem in the
absence of an appearance by the property owner, and
the interposition by him of the statutory defense, which
includes the limitation fixed by the Constitution, and
the assessment is conclusive only of the fact that it has
been made and the legal consequences that follow, to
wit, the fixing of a lien upon the specific property which
can be enforced for the collection of the assessment, and,
if this lien is enforced and the property sold thereun-
der, would have effect to determine irrevocably the stat-
us of the title against all persons, irrespective of wheth-
er they had any other than the constructive notice of
the litigation, or whether they were parties in fact or
not.—24 Am. & Eng. Ency. Law, 827-829; Id. 755; 4
Mayf. Dig. 919, § 42; *Lyon v. Hunt,* 11 Ala. 313, 46 Am.
Dec. 216; *Durant v. Abendroth, supra.* As expressed
in the opinion of the court in the case last cited: "Judg-
ments in rem are conclusive only as to the property in-
volved, and may be controverted as to all the grounds
and incidental facts on which they profess to be found-
ed.—*Vendenheuval v. United Ins. Co.,* 2 Johns. Cas.
(N. Y.) 451, 1 Am. Dec. 180. So the judgment, even
of a neighboring state, on foreign attachment, if the de-
fendant has not appeared and litigated, is treated as a
proceeding in rem and not personally binding on the
party, as a decree or judgment in personam. It only
binds the property seized or attached in the suit."

As said by the Supreme Court: "It has been settled, since the leading decision of *Pennoyer v. Neff*, 95 U. S. 714, 24 L. E. 565, was pronounced, that a personal judgment or decree rendered in a cause against a nonresident upon whom no personal service therein was had is void, and, of course, unenforceable in any manner."— *Sweeney et al. v. Tritsch*, 151 Ala. 245, 44 South. 184.

The case of *Holland v. Fairbanks-Morse Co., supra,* is an apt illustration of the rule that a judgment in rem cannot be set up as res adjudicata of matters on which that judgment is founded in an action in personam; and, although the plea showed that the plaintiff was the owner of the property in the libel suit and appeared and defended in the libel suit, in disposing of that plea, said: "The third plea does not set up a judgment that would be binding on this plaintiff so as to preclude it from recovering a judgment against the present defendant. It does not aver or show that these defendants were privies or parties to the former suit. It shows that the action was against the boat, and not against the present defendants; and while they may have defended the suit against the boat, and the issue here involved may have been litigated, there is no averment in the plea that the adjudication of same could be binding on the parties to the present cause. It is true, the plea avers that the issues here involved were those involved in the former suit, and which might include the defendant's personal liability; yet a decision of this question in a suit between this plaintiff and the boat could have no binding effect upon these defendants, who were not parties thereto, and who merely defended the suit for the boat. There is nothing in the plea to indicate that a personal judgment could have been rendered for or against these defendants in the former suit."

The estoppel here set up, however, is not one founded on the doctrine of res judicata, but is what might be termed "statutory estoppel," or "estoppel by statute." In discussing the proceedings afforded by the statute, and the result of the failure of a property owner to appear before the municipal board and make objections in response to the statutory notice, the Supreme Court says: "In the view we have taken of our statute and the proceeding involved in this case, we have not found it necessary to draw any such distinction in respect to the defects alleged in the bill, for we have placed our judgment upon complainant's failure after due notice to object, when and where he had opportunity, as a statutory estoppel to now complain in the manner and form adopted in the filing of this bill; such estoppel having been declared by the Legislature in the due exercise of its constitutional power to enact laws." —*City of B'ham v. Wills*, 178 Ala. 208, 59 South. 173.

The extent of the estoppel is clearly defined by the statute the provisions of which are as follows, "And persons who do not file objections in writing or protest against such assessment shall be held to have consented to the same"—clearly importing an intention on the part of the Legislature to estop the property owner from disputing the validity of the proceedings leading up to the assessment, or the legality of the assessment —and this is the full extent to which the decision of the Supreme Court has carried this estoppel.—*City of Birmingham v. Wills*, 178 Ala. 198, 59 South. 173; *City of Birmingham v. Abernathy*, 178 Ala. 221, 59 South. 180; *Garner v. City of Anniston*, 178 Ala. 430, 59 South. 654.

It is clear that the sole and only purpose of the Legislature by the provisions of section 1381 of the Code was to cut off inquiry on the part of the property own-

er in so far as it affected the right of the municipality
to collect the assessment made by the municipal board,
and place the property owner in the same category as
if he had actually consented to the assessment. That
such express consent would not bar the plaintiff's right
to recover damages in this case is clearly shown by the
utterances of the Supreme Court as follows: "What-
ever may be the law elsewhere, it is too well settled in
this state for further controversy 'that, under consti-
tutional guaranties, a municipal corporation may not
take or injure the property of a citizen in the exercise
of its power to improve its highways without first mak-
ing compensation; and the right to injunctive relief in
such a case as this exists without reference to the sol-
vency or insolvency of the municipality and regardless
of the consideration that he might recover full com-
pensatory damages in an action at law.'—*City Coun-
cil of Montgomery v. Lemle,* 121 Ala. 609, 25 South. 919;
*Avondale v. McFarland,* 101 Ala. 381, 13 South. 504;
*Niehaus v. Cooke,* 134 Ala. 223, 32 South. 728. We have
therefore no doubt of the equity of the bill, unless its
equity is destroyed by the allegations it contains re-
specting the petition by defendant and other citizens
to the city council, wherein they requested the paving
of Second avenue in front of complainant's property,
and preparatory to which the change of grade and other
work complained of had been ordered. We are not of
opinion that the petition merely to pave the avenue
would be a waiver of damages growing out of the change
in the grade of the highway, as set forth in the bill;
such waiver of a constitutional right ought not to be
lightly inferred, and cannot be clearly derived from the
request to pave the avenue and the agreement to bear
a part of the expenses of the paving.—*Newville Road
Case,* 8 Watts (Pa.) 172; *Barker v. City of Taunton,*

119 Mass. 392; *Birdseye v. City of Clyde,* 61 Ohio St. 27, 55 N. E. 169; *Jones v. Borough of Bangor,* 144 Pa. 638, 23 Atl. 252." *Town of New Decatur v. Scharfenberg,* 147 Ala. 370, 371, 41 South. 1025, 1026, 119 Am. St. Rep. 81.

As was said by Judge Cooley, in discussing this subject: "The technical doctrine of estoppel is one to be applied with great caution, for it sets aside general rules on supposed equities, and the danger is always imminent that wrong may be done. The following decisions have been made. One who petitions for an improvement is not estopped from denying the validity of the assessment therefor on the ground that the statute was not complied with in making the improvements. One is not estopped from seeking restraint of a street assessment by the fact that he has before paid a similar assessment. The mere fact that one knows that work is doing for which an unconstitutional tax is to be laid will not estop him from objecting after the work is done, etc." —2 Cooley on Taaxtion (3d Ed.) 1518, 1519.

To carry the estoppel afforded by the statute to the extent that it precludes the plaintiff from recovering damages in this case would make it offensive to section 235 of the Constitution, which provides, "Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements," etc., and would thereby destroy the constitutional integrity of the statute, and, in consequence the efficacy of the proceeding before the municipal board as a barrier to plaintiff's right of recovery.

There is nothing in the case of *Birmingham v. Wagenseler*, 168 Ala. 344, 5) South. 289, that in any way militates against the conclusions above stated. The proceedings brought in question in that case were under a different statute (the legislative charter of the city of Birmingham), which in effect provided that no assessment could be made where there was general detriment to the property—a provision entirely different from that which is contained in the present statute applicable here. As a matter of fact, that decision is in accord with the conclusion stated above. The construction placed on the charter of the city of Birmingham, there involved, was necessary in order to preserve its constitutional integrity, for otherwise it would have been in conflict with the provisions of the Constitution above quoted. Therefore I entertain the opinion that the trial court properly sustained the demurrer to defendant's plea A, and that the judgment should be affirmed.